## DISCONTO GESELLSCHAFT v. UMBREIT.

ERROR TO THE CIRCUIT. COURT OF MILWAUKEE COUNTY (BRANCH NO. 1), STATE OF WISCONSIN.

No. 63. Argued December 10, 11, 1907 —Decided February 24, 1908.

It is too late to raise the Federal question on motion for rehearing in the state court, unless that court entertains the motion and expressly passes on the Federal question.

While aliens are ordinarily permitted to resort to our courts for redress of wrongs and protection of rights, the removal of property to another jurisdiction for adjustment of claims against it is a matter of comity and not of absolute right, and, in the absence of treaty stipulations, it is within the power of a State to determine its policy in regard thereto.

The refusal by a State to exercise comity in such manner as would impair the rights of local creditors by removing a fund to a foreign jurisdiction for administration does not deprive a foreign creditor of his property without due process of law or deny to him the equal protection of the law; and so held as to a judgment of the highest court of Wisconsin holding the attachment of a citizen of that State superior to an earlier attachment of a foreign creditor.

While the treaty of 1828 with Prussia has been recognized as being still in force by both the United States and the German Empire, there is nothing therein undertaking to change the rule of national comity that permits a country to first protect the rights of its own citizens in local property before permitting it to be taken out of its jurisdiction for administration in favor of creditors beyond its borders.

127 Wisconsin, 676, affirmed.

THE facts are stated in the opinion.

*Mr. F. C. Winkler* for plaintiff in error:

The Federal questions on both points were brought before the Supreme Court of the State and claim made under them in the argument for rehearing. The motion was denied and opinion rendered expressly overruling the claim based on the treaties and by necessary implication, also the claim based on the Constitution of the United States.

The rulings upon them are therefore subject to review. *McKay* v. *Kalyton,* 204 U. S. 458; *Leigh* v. *Green,* 193 U. S.

79; *Columbia Water Power Co.* v. *Columbia Street Railway Co.*, 172 U. S. 465.

The plaintiff's suit was brought under the statutes of Wisconsin. The defendant was in Wisconsin. The property attached had been brought by him and placed on deposit in the State of Wisconsin. No court in the world could exercise jurisdiction either over his person or over his property except the courts of Wisconsin. No statute debars an alien from seeking justice in Wisconsin courts where the protection of his rights requires it.

The plaintiff is denied the benefit of the proceedings and of its judgment because being a foreigner it has no rights in the State of Wisconsin except such as "comity," which is "good nature," will accord it. Even under the ruling of the state court that the right of the plaintiff to pursue its absconding debtor into this country and to invoke the latter's remedial processes against him rests upon the comity, it is, however, the comity of the sovereignty, not of the court. Wharton, Conflict of Laws, § 1a.

Comity cannot be given or withheld at will. Civilization demands its exercise where justice requires it. It cannot be denied, in whole or in part, except on clear, clean principles of justice.

Under the treaty between the United States and the Kingdom of Prussia, made in 1828, if a proper and liberal interpretation be given thereto, the plaintiff in error is entitled to the same standing in court as a citizen of the United States would be in a like case. Public Treaties (Govt. Printing Office, 1875), p. 656; *Tucker* v. *Alexandroff*, 183 U. S. 424, 437. The cases cited by the Supreme Court of Wisconsin, viz.: *Eingartner* v. *Illinois Steel Co.*, 94 Wisconsin, 70; *Gardner* v. *Thomas*, 14 Johnson, 134; *Johnson* v. *Dalton*, 1 Cowen, 543; *DeWitt* v. *Buchanan*, 54 Barb. 31; *Olsen* v. *Schierenberg*, 3 Daly, 100; *Burdick* v. *Freeman*, 120 N. Y. 421, can easily be distinguished from the case at bar.

The state court erred in stating that plaintiff sues as the

agent of a foreign trustee in bankruptcy. That trustee has and claims no rights to the bankrupt's property in Wisconsin. Foreign law does not operate on property beyond its jurisdiction. *Segnitz* v. *G. C. Banking & Trust Co.*, 117 Wisconsin, 171, 176.

The property in question was not transferred to the trustee and that left its legal title in the debtor. The plaintiff being a creditor brought suit on his own claim in his own right.

The circumstance that the creditor after suit commenced promised to turn over the proceeds he should recover to the trustee for distribution does not impair his rights as a creditor.

The course of the plaintiff in no way "sets at naught" the rule of our law that the trustee in bankruptcy does not obtain title to property in Wisconsin by reason of the proceedings in Germany. No claim is made on this score in the intervenor's answer.

The decision of the Supreme Court of Wisconsin deprives the plaintiff of its property rights without due process of law, in violation of the Constitution of the United States.

The judgment which the intervenor obtained, although in the form of the statute, is in point of fact no better than an *ex parte* affidavit. The defendant was to the intervenor's knowledge a prisoner in Germany. The only notice given was by publication of the summons in a Milwaukee paper. No copy of the summons and complaint was ever mailed to the defendant as required by § 2640, Statutes of Wisconsin.

The defendant Terlinden, when the intervenor's suit was commenced against him, had not the slightest interest in the property sought to be reached. All his interest had passed to the plaintiff. The plaintiff was the only party adversely interested to the intervenor. It had an adjudicated lien good against all the world (except the claim of the intervenor).

An alien, too, is entitled to due process of law under the Constitution of the United States. *In re Ah Fung,* 3 Sawyer, 144; *Ah Kow* v. *Nunan,* 5 Sawyer, 562; *In re Ah Chung,* 2 Fed. Rep. 733.

The judgment against Terlinden was, as against this plaintiff, absolutely without process of law.    It adjudicated nothing. The plaintiff was not a party therein, nor was it notified, and it had no opportunity to defend against it.

*Mr. Joseph B. Doe* for defendant in error:

Domestic creditors will be protected to the extent of not allowing the property or funds of a non-resident debtor to be withdrawn from the State before domestic creditors have been paid.    Every country will first protect its own citizens. *Catlin* v. *Silver Plate Co.;* 123 Indiana, 477; *Chafey* v. *Fourth Nat. Bank,* 71 Maine, 414, 524; *Bagby* v. *Railway Co.,* 86 Pa. St. 291; *Lycoming Fire Ins. Co.* v. *Wright,* 55 Vermont, 526; *Thurston* v. *Rosenfelt,* 42 Missouri, 474; *Willitts* v. *Waite,* 25 N. Y. 577.

Citizens and residents of the country where insolvency proceedings have been instituted are bound by such proceedings and cannot pursue the property of the insolvent debtor in another country.    *Cole* v. *Cunningham,* 133 U. S. 107; *Linville* v. *Hadden,* 88 Maryland, 594; *Chafey* v. *Fourth Nat. Bank, supra; Einer* v. *Beste,* 32 Missouri, 240; *Long* v. *Girdwood,* 150 Pa. St. 413; *Bacon* v. *Horne,* 123 Pa. St. 452.

A creditor, by proving his claim in bankruptcy or any insolvency proceedings, submits to the jurisdiction of the court in which the proceeding is pending and cannot pursue his remedy elsewhere.    *Clay* v. *Smith,* 3 Peters, 411; *Cooke* v. *Coyle,* 113 Massachusetts, 252; *Ormsby* v. *Dearborn,* 116 Massachusetts, 386; *Batchelder* v. *Batchelder,* 77 N. H. 31; *Wilson* v. *Capuro,* 41 California, 545; *Wood* v. *Hazen,* 10 Hun, 362.

Where both parties, plaintiff and defendant, are residents of a foreign State, the plaintiff cannot come into our country and obtain an advantage by our law which he could not obtain by his own.

If he seeks to nullify the law of his own State and asks our courts to aid him in so doing, he cannot have such assistance, if for no other reason than that it is forbidden by public policy

and the comity which exists between states and nations, which comity will always be enforced when it does not conflict with the rights of domestic citizens. _Bacon_ v. _Horne, supra; In re Waite_, 99 N. Y. 433; _Bagby_ v. _Railway Co., supra._

Citizens of a foreign State or country will not be aided by the courts of this country to obtain, by garnishment, a preference of their claim against a foreign debtor, in disregard of proceedings in their own country for the sequestration of the debtor's estate and the appointment of a trustee thereof in bankruptcy. _Long_ v. _Girdwood, supra._

It is the uniform rule and doctrine of all courts that the principles of comity do not require that courts confer powers upon a foreign receiver or trustee in bankruptcy or permit him to bring and maintain actions in this State that interfere with and impair the rights of domestic creditors. _Humphreys_ v. _Hopkins_, 81 California, 551; _Ward_ v. _Pac. Mutual Life Ins. Co._, 135 California, 235; _Hunt_ v. _Columbian Ins. Co._, 55 Maine, 290; _Pierce_ v. _O'Brien_, 129 Massachusetts, 314; _Rogers_ v. _Riley_, 80 Fed. Rep. 759; _Catlin_ v. _Wilcox Silver Plate Co._, 123 Indiana, 477.

Mr. Justice Day delivered the opinion of the court.

The Disconto Gesellschaft, a banking corporation of Berlin, Germany, began an action in the Circuit Court of Milwaukee County, Wisconsin, on August 17, 1901, against Gerhard Terlinden and at the same time garnisheed the First National Bank of Milwaukee. The bank appeared and admitted an indebtedness to Terlinden of $6,420. The defendant in error Umbreit intervened and filed an answer, and later an amended answer.

A reply was filed, taking issue upon certain allegations of the answer, and a trial was had in the Circuit Court of Milwaukee County, in which the court found the following facts:

"That on the 17th day of August, 1901, the above-named plaintiff, the Disconto Gesellschaft, commenced an action in

this court against the above-named defendant, Gerhard Ter-linden, for the recovery of damages sustained by the tort of the said defendant, committed in the month of May, 1901; that said defendant appeared in said action by A. C. Umbreit, his attorney, on August 19, 1901, and answered the plaintiff's complaint; that thereafter such proceedings were had in said action that judgment was duly given on February 19, 1904, in favor of said plaintiff, Disconto Gesellschaft, and against said defendant, Terlinden, for $94,145.11 damages and costs; that $85,371.49, with interest from March 26, 1904, is now due and unpaid thereon; that at the time of the commencement of said action, to wit, on August 17, 1901, process in garnishment was served on the above-named garnishee, First National Bank of Milwaukee, as garnishee of the defendant Terlinden

"That on August 9, 1901, and on August 14, 1901, a person giving his name as Theodore Grafe deposited in said First National Bank of Milwaukee the equivalent of German money aggregating $6,420.00 to his credit upon account; that said sum has remained in said bank ever since, and at the date hereof with interest accrued thereon amounted to $6,969.47.

"That the defendant Gerhard Terlinden and said Theodore Grafe, mentioned in the finding, are identical and the same person.

"That the interpleaded defendant, Augustus C. Umbreit, on March 21, 1904, commenced an action in this court against the defendant Terlinden for recovery for services rendered between August 16, 1901, and February 1, 1903; that no personal service of the summons therein was had on the said defendant; that said summons was served by publication only and without the mailing of a copy of the summons and of the complaint to said defendant; that said defendant did not appear therein; that on June 11, 1904, judgment was given in said action by default in favor of said Augustus C. Umbreit and against said defendant Terlinden for $7,500 damages, no part whereof has been paid; that at the time of the commencement of said action process of garnishment was served, to wit, on March 22,

1904, on the garnishee, First National Bank of Milwaukee, as garnishee of said defendant Terlinden.

"That the defendant Terlinden at all the times set forth in finding number one was and still is a resident of Germany; that about July 11, 1901, he absconded from Germany and came to the State of Wisconsin and assumed the name of Theodore Grafe; that on August 16, 1901, he was apprehended as a fugitive from justice upon extradition proceedings duly instituted against him, and was thereupon extradited to Germany.

"That the above-named plaintiff, The Disconto Gesellschaft, at all the times set forth in the findings was, ever since has been and still is a foreign corporation, to wit, of Germany, and during all said time had its principal place of business in Berlin, Germany; that the above-named defendant, Augustus C. Umbreit, during all said times was and still is a resident of the State of Wisconsin.

"That on or about the 27th day of July, 1901, proceedings in bankruptcy were instituted in Germany against said defendant Terlinden, and Paul Hecking appointed trustee of his estate in such proceedings on said date; that thereafter, and on or after August 21, 1901, the above-named plaintiff, The Disconto Gesellschaft, was appointed a member of the committee of creditors of the defendant Terlinden's personal estate, and accepted such appointment; and that the above-named plaintiff, The Disconto Gesellschaft, presented its claim to said trustee in said bankruptcy proceedings; that said claim had not been allowed by said trustee in January, 1902, and there is no evidence that it has since been allowed; that nothing has been paid upon said claim; that said claim so presented and submitted is the same claim upon which action was brought by the plaintiff in this court and judgment given, as set forth in finding No. 1; that said action was instituted by said plaintiff, The Disconto Gesellschaft, through the German consul in Chicago; and that the steps so taken by the plaintiff, The Disconto Gesellschaft, had the consent and approval of Dr. Paul Hecking as trustee in bankruptcy, so appointed in the bank-

ruptcy proceedings in Germany, and that after the commencement of the same the plaintiff, The Disconto Gesellschaft, agreed with said trustee that the moneys it should recover in said action should form part of the said estate in bankruptcy and be handed over to said trustee; that, among other provisions, the German bankrupt act contained the following: 'Sec. 14, Pending the bankruptcy proceedings, neither the assets nor any other property of the bankrupt are subject to attachment or execution in favor of individual creditors.' "

Upon the facts thus found the Circuit Court rendered a judgment giving priority to the levy of the Disconto Gesellschaft for the satisfaction of its judgment out of the fund attached in the hands of the bank. Umbreit then appealed to the Supreme Court of Wisconsin. That court reversed the judgment of the Circuit Court, and directed judgment in favor of Umbreit, that he recover the sum garnisheed in the bank. 127 Wisconsin, 651. Thereafter a remittitur was filed in the Circuit Court of Milwaukee County and a final judgment rendered in pursuance of th  direction of the Supreme Court of Wisconsin. This writ of error is prosecuted to reverse that judgment. At the same time a decree in an equity suit, involving a fund in another bank, was reversed and remanded to the Circuit Court. This case had been heard, by consent, with the attachment suit. With it we are not concerned in this proceeding.

No allegation of Federal rights appeared in the case until the application for rehearing. In this application it was alleged that the effect of the proceedings in the state court was to deprive the plaintiff in error of its property without due process of law, contrary to the Fourteenth Amendment, and to deprive it of certain rights and privileges guaranteed to it by treaty between the Kingdom of Prussia and the United States. The Supreme Court of Wisconsin, in passing upon the petition for rehearing and denying the same, dealt only with the alleged invasion of treaty rights, overruling the contention of the plaintiff in error. 127 Wisconsin, 676. It is well settled in this court that it is too late to raise Federal questions review-

able here by motions for rehearing in the state court. *Pim* v. *St. Louis*, 165 U. S. 273; *Fullerton* v. *Texas*, 196 U. S. 192; *McMillen* v. *Ferrum Mining Company*, 197 U. S. 343, 347; *French* v. *Taylor*, 199 U. S. 274, 278. An exception to this rule is found in cases where the Supreme Court of the State entertains the motion and expressly passes upon the Federal question. *Mallett* v. *North Carolina*, 181 U. S. 589; *Leigh* v. *Green*, 193 U. S. 79.

Conceding that this record sufficiently shows that the Supreme Court heard and passed upon the Federal questions made upon the motion for rehearing, we will proceed briefly to consider them.

The suit brought by the Disconto Gesellschaft in attachment had for its object to subject the fund in the bank in Milwaukee to the payment of its claim against Terlinden. The plaintiff was a German corporation and Terlinden was a German subject. Umbreit, the intervenor, was a citizen and resident of Wisconsin. The Supreme Court of Wisconsin adjudged that the fund attached could not be subjected to the payment of the indebtedness due the foreign corporation as against the claim asserted to the fund by one of its own citizens, although that claim arose after the attachment by the foreign creditor; and, further, that the fact that the effect of judgment in favor of the foreign corporation would be, under the facts found, to remove the fund to a foreign country, there to be administered in favor of foreign creditors, was against the public policy of Wisconsin, which forbade such discrimination as against a citizen of that State.

Alien citizens, by the policy and practice of the courts of this country, are ordinarily permitted to resort to the courts for the redress of wrongs and the protection of their rights. 4 Moore, International Law Digest, § 536, p. 7; Wharton on Conflict of Laws, § 17.

But what property may be removed from a State and subjected to the claims of creditors of other States, is a matter of comity between nations and states and not a matter of abso-

lute right in favor of creditors of another sovereignty, when citizens of the local state or country are asserting rights against property within the local jurisdiction.

"'Comity,' in the legal sense," says Mr. Justice Gray, speaking for this court in *Hilton* v. *Guyot*, 159 U. S. 113, 163, "is neither a matter of absolute obligation on the one hand nor of mere courtesy and good will upon the other. But it is the recognition which one nation allows in its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws."

In the elaborate examination of the subject in that case many cases are cited and the writings of leading authors on the subject extensively quoted as to the nature, obligation and extent of comity between nations and states. The result of the discussion shows that how far foreign creditors will be protected and their rights enforced depends upon the circumstances of each case, and that all civilized nations have recognized and enforced the doctrine that international comity does not require the enforcement of judgments in such wise as to prejudice the rights of local creditors and the superior claims of such creditors to assert and enforce demands against property within the local jurisdiction. Such recognition is not inconsistent with that moral duty to respect the rights of foreign citizens which inheres in the law of nations. Speaking of the doctrine of comity, Mr. Justice Story says: "Every nation must be the final judge for itself, not only of the nature and extent of the duty, but of the occasions on which its exercise may be justly demanded." Story on Conflict of Laws, § 33.

The doctrine of comity has been the subject of frequent discussion in the courts of this country when it has been sought to assert rights accruing under assignments for the benefit of creditors in other States as against the demands of local creditors, by attachment or otherwise in the State where the property is situated. The cases were reviewed by Mr. Justice Brown,

delivering the opinion of the court in *Security Trust Company* v. *Dodd, Mead & Co.*, 173 U. S.. 624, and the conclusion reached that voluntary assignments for the benefit. of creditors should be given force in other States as to· property therein situate, except so far as they come in conflict with the rights of local creditors, or with the public policy of the State in which it is sought to be enforced; and, as was said by Mr. Justice McLean in *Oakey* v. *Bennett*, 11 How. 33, 44, " national comity does not require any government to. give effect to such assignment [for the benefit of creditors] when it shall impair the remedies or lessen the securities of 'its own citizens."

There being; then, no provision of positive law requiring the recognition of the right of the plaintiff in error to appropriate property in the State of Wisconsin and subject it to distribution for the benefit of foreign creditors as against the demands of ·local creditors,· how far the public policy of the State permitted such recognition was a matter for the State to determine for itself. . In determining that the policy of Wisconsin would not permit the property to be thus appropriated to the benefit of alien creditors as against the demands of the citizens of the State, the Supreme Court of Wisconsin has done no more than has been frequently done by nations and states in refusing to exercise the doctrine of comity in such wise as to impair the right of local creditors to subject local property to their just claims. We fail ·to perceive how this application of a well known rule can be said to deprive the plaintiff. in error of its property without due process of law.

Upon the motion for rehearing the plaintiff in error called attention to two alleged treaty provisions between the United States and the Kingdom of Prussia, the first from the treaty of 1828, and the second from the treaty of 1799. As to the last mentioned treaty the following provision was referred to:

"Each party shall.endeavor. by all the means in their power· to protect and defend all vessels and other effects belonging to the citizens or subjects of the other, which shall be within the extent of their jurisdiction by sea or by land."

The treaty of 1799 expired by its own terms on June 2, 1810, and the provision relied upon is not set forth in so much of the treaty as was revived by article 12 of the treaty of May 1, 1828. See Compilation of Treaties in Force, 1904, prepared under resolution of the Senate, pp. 638 *et seq.* If this provision of the treaty of 1799 were in force we are unable to see that it has any bearing upon the present case.

Article one of the treaty of 1828 between the Kingdom of Prussia and the United States is as follows:

"There shall be between the territories of the high contracting parties a reciprocal liberty of commerce and navigation. The inhabitants of their respective states shall mutually have liberty to enter the ports, places and rivers of the territories of each party wherever foreign commerce is permitted. They shall be at liberty to sojourn and reside in all parts whatsoever of said territories, in order to attend to their affairs; and they shall enjoy, to that effect, the same security and protection as natives of the country wherein they reside, on condition of their submitting to the laws and ordinances there prevailing."

This treaty is printed as one of the treaties in force in the compilation of 1904, p. 643, and has undoubtedly been recognized by the two governments as still in force since the formation of the German Empire. See *Terlinden* v. *Ames*, 184 U. S. 270; Foreign Relations of 1883, p. 369; Foreign Relations of 1885, pp. 404, 443, 444; Foreign Relations of 1887, p. 370; Foreign Relations of 1895, part one, 539.

Assuming, then, that this treaty is still in force between the United States and the German Empire, and conceding the rule that treaties should be liberally interpreted with a view to protecting the citizens of the respective countries in rights thereby secured, is there anything in this article which required any different decision in the Supreme Court of Wisconsin than that given? The inhabitants of the respective countries are to be at liberty to sojourn and reside in all parts whatsoever of said territories in order to attend to their affairs, and they shall enjoy, to that effect, the same security and protection as

the natives of the country wherein they reside, upon submission to the laws and ordinances there prevailing. It requires very great ingenuity to perceive anything in this treaty provision applicable to the present case. It is said to be found in the right of citizens of Prussia to attend to their affairs in this country. The treaty provides that for that purpose they are to have the same security and protection as natives in the country wherein they reside. Even between States of the American Union, as shown in the opinion of Mr. Justice Brown in *Security Trust Co.* v. *Dodd, Mead & Co.*, 173 U. S., *supra*, it has been the constant practice not to recognize assignments for the benefit of creditors outside the State, where the same came in conflict with the rights of domestic creditors seeking to recover their debts against local property. This is the doctrine in force as against natives of the country residing in other states, and it is this doctrine which has been applied by the Supreme Court of Wisconsin to foreign creditors residing in Germany. In short, there is nothing in this treaty undertaking to change the well-recognized rule between states and nations which permits a country to first protect the rights of its own citizens in local property before permitting it to be taken out of the jurisdiction for administration in favor of those residing beyond their borders.

The judgment of the Circuit Court of Milwaukee County entered upon the remittitur from the Supreme Court of Wisconsin is.

*Affirmed.*