JOSE GONZALEZ FANTONY, PLAINTIFF-APPELLANT, v. KATHRYN B. FANTONY, DEFENDANT-RESPONDENT, AND REPUBLIC OF CUBA, INTERVENOR-APPELLANT.

Argued April 23, 1956—Decided May 14, 1956.

526

*Mr. Leon Dreskin* argued the cause for the plaintiff and intervenor-appellant (*Mr. Frederick C. Vonhof,* on the brief).

*Mr. Charles Handler* argued the cause for the defendant-respondent.

The opinion of the court was delivered by

OLIPHANT, J.  This is an appeal from a judgment of the Superior Court, Chancery Division, awarding the custody of an infant child to the defendant-respondent mother.  The Republic of Cuba was permitted to intervene below since the

plaintiff-appellant is a national of that country. We certified the appeal here on our own motion. *R. R.* 1:10–1(*a*).

The appellant married the respondent, who prior to her marriage was a United States citizen and a resident of this State, on July 9, 1948, in Havana, Cuba. They cohabited there until the early part of January 1952. The child Patricia was born in this State at the Fitkin Memorial Hospital, Neptune, New Jersey. The mother came back to this country with the father's permission so that she could be near her own mother when the child was born. Several months later respondent returned with her daughter to Cuba and during the next two years the family visited back and forth with her mother.

In November 1951 the respondent's mother went to Havana to visit her, and on January 9, 1952 the respondent, her mother and the child left Havana by airplane under assumed names. This was admittedly done without the knowledge of the appellant-husband, without his consent and against his will. They have resided in New Jersey ever since.

The appellant followed immediately and on January 22, 1952 filed a complaint in the Superior Court, Chancery Division, asking that the child be produced in court and praying that the custody of the child be awarded to him. When this action came on for final hearing on November 18, 1952 Judge McLean was informed that the parties had composed their differences and that the respondent had agreed in writing to return with their child to Havana shortly after January 1, 1953. The respondent subsequently refused to return to Havana and appellant thereupon secured an order vacating the judgment and reinstating the action for trial.

In the meanwhile, after having instituted this suit in this State in January 1952, the appellant instituted an action for divorce in Havana, Cuba, on the grounds of desertion on July 26, 1952, and process issued in that case on July 30, 1952, and the respondent was personally served in Asbury Park in this State on September 28, 1952. The action was for desertion based upon a six months' desertion which is a ground for divorce under the Cuban law. The respondent-

wife did not appear or contest that proceeding. A judgment for divorce on the grounds of desertion was entered in that cause on July 10, 1953, in favor of the appellant, and custody of the child was awarded to the appellant in that case. The judgment was served on the respondent on July 27, 1953.

The matter again came on for final hearing in January 1954, and after several days of hearing Judge McLean held that the parties to this proceeding were domiciled in the Republic of Cuba, residing in Havana at the time this action was instituted and when it was heard, and that the question of custody should be determined in the court of the Republic of Cuba where the parties were domiciled. He dismissed the complaint and the counterclaim of the respondent-wife for maintenance and he denied a motion to supplement the record to set forth the proceeding and judgment for divorce obtained by the appellant in Havana, Cuba. The plaintiff-appellant here then appealed from this judgment and the order denying the application to supplement the record, to the Appellate Division.

On that appeal certified copies of the Cuban divorce and custody proceedings were presented to the Appellate Division, but they expressly reserved any determination with respect to whether such judgment would or would not be conclusive and held that the appellant should have the right to submit the Cuban judgment by way of supplemental complaint and the defendant the opportunity to raise such jurisdictional questions and set up such defenses as would be appropriate, and the cause was remanded for that purpose. *Gonzalez-Fantony v. Fantony,* 31 *N. J. Super.* 14 (*App. Div.* 1954).

The matter then came on for trial before Judge Knight and the record of the Cuban proceedings was established by evidence and there was testimony concerning the laws of Cuba on divorce and custody. Judge Knight held that the record of the Cuban proceedings reciting all the evidence taken and the testimony of the expert on Cuban law taken in this case indicated that no evidence had been or could be received by the Cuban court relative to the welfare of the child "since the award of custody to the mother residing

abroad would 'fall under the materially impossible provisions' of the code" as testified by the expert. He found that the Cuban court had not been apprized that a contested custody proceeding was then pending in this State with all the parties before the court, including the Republic of Cuba as an intervenor. He found that the notice served upon the respondent did not sufficiently apprize her of the fact that the custody question would be placed in issue there, found that the legislative policy of this State is opposed to the removal from this State of "native children" and this would be especially enforced since the Cuban law takes an even more positive attitude in this respect and does not make the welfare of the child the cornerstone of guidance in such issues. He awarded custody to the mother because the child was of tender years, (1) on the presumption the mother's right would be superior, and (2) on the report of the Probation Department of Essex County that the child was a happy and healthy child receiving excellent care from the mother, doing very well in school in all activities and receiving adequate religious training and that her routine of life should not be disrupted at this time. He said the paramount concern was for the welfare of the child and awarded custody to the respondent with visitation privileges and with the amount of support to be agreed upon by the parties.

The first point made by the appellant is that the law of the case has been fixed by the opinion of Judge McLean and by that of the Appellate Division. We agree that the prior decision of the Appellate Division for the purposes of the retrial became the law of the case and binding on the trial court; but it is not *stare decisis* on this court. *New Amsterdam Casualty Co. v. Popovich,* 18 *N. J.* 218, 224 (1955), and the cases cited. In fact, the Appellate Division did not decide the question here presented but remanded it to the trial court.

On the authority of *Hachez v. Hachez,* 124 *N. J. Eq.* 442, 446 (*E. & A.* 1938), the appellant contends that the Cuban decree under the rule of comity is entitled to full faith and

credit in this State and is *res adjudicata* of the question subsequently decided by Judge Knight in the proceeding here and binding on the courts of this State.

Comity, in a legal sense, is neither a matter of absolute obligation on the one hand nor of mere courtesy and good will upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience and to the rights of its own citizens or of other persons who are under the protection of its laws. *Hilton v. Guyot,* 159 *U. S.* 113, 16 *S. Ct.* 139, 143, 40 *L. Ed.* 95 (1895); *The Disconto Gesellschaft v. Umbreit,* 208 *U. S.* 570, 28 *S. Ct.* 337, 340, 52 *L. Ed.* 625 (1908). Also see 11 *Am. Jur., sec.* 5, *p.* 299.

The recognition of a judgment of a foreign court under the principle of comity is subject generally to two conditions: (1) that the foreign court had jurisdiction of the subject matter; (2) that the foreign judgment will not offend the public policy of our own State. *Zanzonico v. Neeld,* 17 *N. J.* 490, 495 (1955); *cf. Guarantee Bank & Trust Co. v. Gillies,* 8 *N. J.* 88, 101 (1951); *Hachez v. Hachez, supra,* 124 *N. J. Eq.,* at *page* 447. The rule of comity is grounded in the policy of avoiding conflicts in jurisdiction, unless upon strong grounds, and the general principle that the court which first acquires jurisdiction of an issue has precedence, in the absence of special equities. A litigant cannot be compelled to act elsewhere, but may remain in the court which first acquires jurisdiction and abide by the terms of its decree. *O'Loughlin v. O'Loughlin,* 6 *N. J.* 170, 179 (1951); *Stultz v. Stultz,* 15 *N. J.* 315, 319 (1954). The expressions in these cases on the principles of comity are in accord with the decisions of the United States Supreme Court.

The appellant here voluntarily invoked the jurisdiction of our courts, when he instituted his original action for custody in this State. It was presumed from this that he would abide by the judgment of our courts, without the courts maintaining physical power over his actions, and that

he would remain in the jurisdiction and abide by the judgment. *Swanson v. Swanson*, 8 *N. J.* 169, 179 (1951). In the words of Mr. Justice Holmes, "This is one of the decencies of civilization that no one would dispute." *Michigan Trust Co. v. Ferry*, 228 *U. S.* 346, 353, 33 *S. Ct.* 550, 552, 57 *L. Ed.* 867 (1913).

*Hachez v. Hachez, supra,* relied on by the appellant, is distinguishable. There none of the parties was resident or domiciled in New Jersey. The mother was temporarily a resident of the City of New York; the father was a citizen of Germany; the marriage was in Cuba, and the matrimonial *res* was always there. The divorce was in Cuba when both parties were resident there, and both parties appeared in a contested case and there was incorporated in the decree by mutual consent a provision granting custody of the child to the mother with the right of visitation in the father. The latter, while exercising his right of visitation, took the child and left Havana by plane bound for Newark with the intent of embarking for a German port from New York on the following day. He was taken into custody by the police in Newark on a request from the Havana police, and the complaint for custody was immediately filed in this State on behalf of the mother.

Our Court of Errors and Appeals held that while the child was not "an inhabitant" of this State within the intendment of the statute, nevertheless the general equity jurisdiction *parens patriae* was invocable to prevent an invasion of the provisions of a foreign decree for custody that under the principles of comity was enforceable in this jurisdiction, except as to the question of the fitness of the guardian in whose custody the child was in this State. In giving the foreign decree such recognition under the principles of comity, the court simply gave it the same recognition we would give to a decree of a sister state under similar facts and circumstances. *Robison v. Robison*, 9 *N. J.* 288, 291 (1952); *Stultz v. Stultz, supra*, 15 *N. J.*, at *page* 319; *Nappe v. Nappe*, 20 *N. J.* 337, 343 (1956), and the cases cited.

In the *Hachez* case the final judgment in divorce had been entered in a contested proceeding in which all the parties appeared. The father and mother were citizens of a foreign state. Here the Cuban proceeding was instituted subsequent to the proceeding for custody in this State, and service upon the respondent was only had by substituted service and she did not appear in Havana nor could she be required to do so under the circumstances.

The finding of the fact of domicile by the Cuban court, where personal service was not made on the respondent or the child, does not foreclose our courts in the protection of the rights of its residents and citizens in their relation to our social institutions in accord with public policy of this state. *Lea v. Lea,* 18 *N. J.* 1, 7 (1955); *Untermann v. Untermann,* 19 *N. J.* 407, 416 (1955), and the United States Supreme Court decisions cited therein.

The appellant and respondent are now divorced and Cuban domicile cannot be forced upon the mother and it cannot be forced upon the child where the child's interest would not be served by that course, or rather would be better served by a contrary course. In fact, the welfare of the child was not considered in the Cuban proceeding nor was the child represented by a guardian *ad litem. Cf. Isserman v. Isserman,* 11 *N. J.* 106, 115 (1952).

The appellant initially invoked the extensive jurisdiction of our courts. This jurisdiction of a state to regulate the custody of infants found within its territory does not depend upon the domicile of the parents. It has its origin in the protection that is due to the incompetent or helpless, and our jurisdiction *parens patriae* is firmly established in our jurisprudence and is derived from common law, our case law and the statutes. *Hachez v. Hachez, supra; Brown v. Parsons,* 136 *N. J. Eq.* 493, 500, 501 (*E. & A.* 1945); *Henderson v. Henderson,* 10 *N. J.* 390, 395 (1952), and the cases cited there. *N. J. S. A.* 9:2–1 *et seq.* and *N. J. S.* 2A:34–23 both supplement the *parens patriae* jurisdiction. *Conwell v. Conwell,* 3 *N. J.* 266, 272 (1949).

■ In a proceeding in custody the residence of the child suffices though the domicile may be elsewhere, and conversely the residence of the child cannot be used for the adjudication of parental rights depending upon the marital status of the parents. *Hachez v. Hachez, supra; Finlay v. Finlay,* 240 *N. Y.* 429, 148 *N. E.* 624, 40 *A. L. R.* 937 (*Ct. App.* 1925).

■ The child Patricia, born in Neptune, New Jersey, is a citizen of the United States and the State of New Jersey, 8 *U. S. C. A., sec.* 1401, and she did not lose her United States citizenship by virtue of the fact that the marital domicile of her parents was in Cuba or that she was resident there with them for a period of time. *Perkins v. Elg,* 307 *U. S.* 325, 59 *S. Ct.* 884, 83 *L. Ed.* 1320 (1939). Neither the domicile of the parents nor the prior residence of the child in a foreign jurisdiction affect the jurisdiction in this case. Under the *parens patriae* jurisdiction the Superior Court, Chancery Division, has the same authority and control over the care and custody of infants who are actually residents of this State as it has over those who are domiciled here. *In re Williams,* 77 *N. J. Eq.* 478 (*Ch.* 1910).

■ For these reasons the court below had jurisdiction to decide the question of the custody of the child Patricia, as between the contesting parents, in accordance with the law and public policy of this State; and, under the principles of comity, its jurisdiction having been voluntarily invoked by the appellant prior to his recourse to the courts of Cuba, the court below had precedence of jurisdiction over the Cuban court and it was not required to give full force and effect to the award of custody in the judgment of the Cuban court.

■ Our law in a cause involving the custody of a minor child is that the paramount consideration is the safety, happiness, physical, mental and moral welfare of the child. Neither parent has a superior right to custody. *Scanlon v. Scanlon,* 29 *N. J. Super.* 317, 325 (*App. Div.* 1954); *Sheehan v. Sheehan,* 38 *N. J. Super.* 120, 125

(*App. Div.* 1955); *Lippincott v. Lippincott,* 97 *N. J. Eq.* 517 (*E. & A.* 1925). Each case is decided on its own facts and circumstances.

The appellant does not challenge the finding that the child is a happy, healthy and well-adjusted child and is receiving excellent care from its mother, and on the proofs before the court this can hardly be disputed. Based on her actions in relation to himself as the husband, he raises a question as to her responsibility as a mother. He then asserts that since he is a Cuban national, it is to the best interests of the child that it grow up knowing its father and be familiar with the language and customs of his country. But his testimony is quite vague as to the means and methods by which he could discharge this duty, if the child were awarded to him and taken to Cuba. There seems to be a suggestion that the child would be placed in the home of a married sister, an environment that would be strange to a seven-year-old girl to which the child might not readily accommodate herself. No question can be raised as to the fidelity of the father to his child, and he has up to now fully discharged his duty to it, but nothing in the record persuades us that the child should be lifted out of her present happy and healthful circumstances, which would necessarily follow if we awarded custody to the appellant.

The appellant next contends that the respondent should be denied any relief because she comes into court with unclean hands. The clean hands doctrine has reference to a party who, *as an actor,* seeks a remedy he cannot have under the principle. *Yeiser v. Rogers,* 19 *N. J.* 284 (1955). It was the appellant who invoked the jurisdiction of our courts and the respondent had the right to contest the issue. We observe, however, that her claim for relief by way of maintenance and support was denied below and she did not appeal. Further, in a proceeding for the custody of a child in the situation here present, our courts will not intervene in a dispute between parents as to their marital status when it is unnecessary for the welfare of the child. *Hachez v. Hachez, supra; Finlay v. Finlay, supra.*

No showing has been made here that would call for such intervention. There is no charge of neglect of the child or of moral turpitude of the mother. The charge is that she unlawfully deserted her husband and has failed to discharge her marital duties to him, but a wife's misconduct does not preclude an award of custody to her if the child's best interest is thereby served. *Matflerd v. Matflerd,* 10 *N. J. Super.* 132 (*App. Div.* 1950).

The appellant appeals from an award of a counsel fee of $2,500 to the respondent's counsel who represented her on the trial of the cause on remand by the Appellate Division. At that point present counsel was substituted for Herman Kapp, Esq. For his work prior thereto a counsel fee of $2,500 had been awarded to Mr. Kapp. We feel that an additional fee of $1,500 is ample compensation. Any further allowance chargeable against the husband would be inequitable and possibly punitive. Up to the moment he has discharged all his required obligations to the child and the wife may not be without fault in creating the difficult situation in which as parents of the child they both presently find themselves.

The order awarding the custody of the child, Patricia Mercedes Gonzalez Fantony, to the respondent mother is affirmed. Costs to the respondent, but no counsel fee will be allowed on this appeal.

The order below as modified is affirmed.

*For modification and affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, JACOBS and BRENNAN—6.

*For reversal*—None.