566

EDDY GOSSCHALK, PLAINTIFF-RESPONDENT, v. FRAN-
CISKA JOKL GOSSCHALK, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 20, 1958—Decided February 6, 1958.

Before Judges CLAPP, JAYNE and SCHETTINO.

*Mr. Nicholas S. Schloeder* argued the cause for plaintiff-respondent.

*Mr. Samuel A. Bloom* argued the cause for defendant-appellant.

The opinion of the court was delivered by

SCHETTINO, J. A. D. Appeal is from a judgment *nisi* in favor of plaintiff-husband against defendant-wife, based upon the statutory grounds of desertion, *N. J. S.* 2A :34–2 (*b*).

The parties were married in New York on July 24, 1947 at which time they were both Dutch nationals visiting this country. Both had previously been married and were parents of grown children. Their respective spouses had died. No child has been born of this marriage. Prior to the marriage, they executed an antenuptual property agreement in the presence of the Netherlands' Vice Consul in New York City. The period between the date of the marriage and November, 1950 was spent in numerous trips both here and abroad in conjunction with plaintiff's spice business as an importer and exporter.

In 1947 when plaintiff arrived in the United States he did so as a temporary visitor, and defendant, as plaintiff's

prospective bride, also came as a temporary visitor. After the marriage and until the end of the summer season, plaintiff and defendant stayed at a summer house in Asbury Park and, when their summer occupancy expired in September 1947, defendant returned to Europe. In June or July, 1949, they again visited the United States on a visitor's visa, staying at hotels in New York City until December 12 or 14, when they left for France and then Holland until November 1950.

It is particularly the period subsequent to November 1950, when respondent returned to this country under a "visitor's visa" which had endorsed thereon the reference to his right to a "treaty trader's" visa had there been an appropriate treaty between the United States and the Netherlands in effect, with which we concern ourselves.

Plaintiff, without defendant, next visited the United States in November 1950 on a visitor's visa for a period of three months. He obtained one extension of that visa, which extension was to expire on May 8, 1951. On May 4, 1951 he filed an application for a second extension of six months. At that time he specifically represented that he was in possession of a "return passage or ticket"; that his mailing address was 141st Street, Flushing, Long Island, New York, and that:

"I have a 3 (2) [Visitor's Visa—formerly under 8 *U. S. C. A.* § 203 (2) ; presently 8 *U. S. C. A.* § 1101 (*a*) (15) (*B*)] visa only because the Dutch treaty is not yet in effect."

His visa contained an endorsement:

"Mr. Eddy Gosschalk would be eligible for a 3(6) visa if the appropriate treaty between the United States and the Netherlands were in effect.

James A. Niederjohn,
American Vice-Consul"

The reference to 3(6) is to the former provision of 8 *U. S. C. A.* § 203(6), which now is incorporated in 8 *U. S. C. A.* § 1101(a)(15)(*E*). On the expiration of

the second extension he applied for a third extension of six months. This application was dated June 2, 1952. The third application contained the same address and statement with respect to his status.

In May or June 1951, defendant and one of her daughters came to the United States from Holland. After a short stay in New York City, they rented a summer house in Asbury Park where they remained together until August 1951. At that time defendant and her daughter returned to Holland. Plaintiff remained in Asbury Park until October 15, 1951, when he moved to 157 Edgar Street, Weehawken.

Plaintiff testified that during 1950 he decided to come to the United States inasmuch as he had large interests over here, and that it was then that he first formulated the desire to become a permanent resident of the United States. On July 17, 1950 plaintiff obtained from the United States Consul in Rotterdam a confirmation of his application for immigration to this country, containing Dutch quota numbers for himself, his wife and defendant's two children. Upon his last arrival plaintiff, under a corporate name, engaged in the importing and exporting business with offices at 79 Wall Street, New York City. The books of the company showed it had done a business of $500,000 in 1953.

In the spring of 1952 plaintiff advised defendant that he wanted to purchase a home in Asbury Park. The record indicates a down-payment of $500 by plaintiff on the purchase of a house in Asbury Park. Defendant stated in a letter in strong and unmistakable language her refusal to live with plaintiff in Asbury Park and "As far as I am concerned, buy yourself a house in Honolulu" and that she "had enough of it." Nevertheless, as a result of exchange of correspondence, defendant was finally persuaded to come to America in September 1952. After remaining for a day or two in Weehawken, plaintiff, defendant and a daughter of defendant went to Montreal, Canada, to obtain an immigration visa. In 1951 plaintiff's file had been transferred from Rotterdam to Montreal so that he would not have to

go all the way back to Rotterdam when his number was reached. Plaintiff failed to get an immigration visa and all of them returned to Weehawken.

On November 7, 1952 defendant went back to Holland. According to plaintiff, his next news about defendant was that plaintiff's assets had been seized in Holland at the suit of the defendant, and a court order, similar to our alimony *pendente lite,* was obtained by defendant. The amount was about $200 a month in American dollars and equivalent to about $500 in purchasing power. The Dutch court records show that plaintiff received permission to file a counterclaim on December 16, 1953, but did not do so until March 24, 1955—more than 15 months later. Plaintiff in the Dutch suit, defendant here, did not move her case in Holland until November 6, 1956, after six trial days in the New Jersey action, almost four years after her suit was begun and two years after the filing of this action.

In February 1953 plaintiff, in response to a summons from the Department of Justice, was examined as to his claim as a treaty-trader, submitted the books of his business enterprise, and secured an extension. Before its termination plaintiff obtained his immigration visa, October 16, 1953. Plaintiff testified that he continued to live at 157 Edgar Street, Weehawken, until April 1955, when he moved to his address at 7200 Boulevard East, North Bergen, New Jersey.

On November 23, 1954 plaintiff filed this suit against his wife. Following a substitution of attorneys in January 1956, the trial began on April 5, 1956 and continued until December 6, 1956—taking up parts of nine trial dates. On January 25, 1957 our trial court awarded a judgment *nisi* to the plaintiff, pursuant to an oral opinion.

No appeal is taken from the trial court's determination that a cause of action has been established, except on the grounds: (a) that jurisdiction is lacking under *N. J. S.* 2A:34–10 in that neither party was a *bona fide* resident of New Jersey for two years next preceding the commencement of the suit, November 23, 1954; (b) that, for the

fact that since December 31, 1952 there has been pending in the District Court of Amsterdam, Holland, a suit by the wife against the husband for divorce on the ground of adultery and, in the alternative, a suit for separation on the grounds of excesses, ill-treatment and gross insults, and a counterclaim for similar relief by the husband against the wife, the Chancery Division case is barred and the asserted period of willful and obstinate desertion claimed by plaintiff is suspended or tolled; and (c) at argument, an additional ground that, since both are nationals of Holland and since the law suit in Holland was filed before this action, we must stay our action, await and abide the judgment of the Dutch courts in order not to violate the principle of comity.

In *Schack v. Trimble*, 48 *N. J. Super.* 45, 52 (*App. Div.* 1957), we stated:

"It is true that every intendment is in favor of the judgment under review and we should only make our own finding if we are well satisfied that the trial court's finding is a mistaken one and offends the interest of justice. *New Jersey Highway Authority v. J. & F. Holding Co.*, 40 *N. J. Super.* 309, 317 (*App. Div.* 1956). However, respect for the trial court's finding imposes no restraint on our power fully to analyze the proofs and reach a conclusion whether or not the finding is consistent with the evidence. *Gagliano v. Maggio*, 32 *N. J. Super.* 219, 225 (*App. Div.* 1954), certification denied 17 *N. J.* 57 (1954). The exercise of our permissive power is brought into play when 'required to do justice in the particular case.' *Midler v. Heinowitz*, 10 *N. J.* 123, 128 (1952)."

A studied analysis of the events subsequent to November 1950 is necessitated by the fact that appellant wife contends that the Chancery Division lacked jurisdiction insofar as respondent was not a *bona fide* resident of this State for the two years next preceding the commencement of the action within the contemplation of *N. J. S.* 2A:34–10. It is well established that the words *"bona fide* resident" are synonymous with "domiciliary" and mean that plaintiff or defendant must be actually domiciled within New Jersey. *Voss v. Voss*, 5 *N. J.* 402, 406–407 (1950). The term "residence," as used in our Divorce Act, includes not only the *factum* of residence but also the *animus manendi*,

since the residence required by the statute is equivalent to domicile. Thus the question resolves itself to a determination as to whether the respondent was a New Jersey domiciliary on or before November 1952, two years prior to the institution of this suit.

It is generally recognized that the two requisites without which no domicile of choice could be established are (1) physical presence, and (2) the concomitant unqualified intention to remain permanently and indefinitely. The case of *Harral v. Harral,* 39 *N. J. Eq.* 279, 285 (*E. & A.* 1884), defines these elements, essential to the acquisition of domicile particularly in divorce matters, that there must be a "voluntary" change of residence, the residence at the place chosen for the domicile must be actual, that to the *factum* of residence there must be added the *animus manendi,* that that place is the domicile of a person in which he has "voluntarily" fixed his habitation, not for a temporary or special purpose, but with the present "intention" of making it his home, unless or until something which is uncertain or unexpected shall happen to induce him to adopt some other permanent home. As stated above, the *factum* of residence and the *animus manendi* prove the domicile. Consequently, the "intention" to acquire new domicile, and not the "purpose" in making the change is the pivot on which the inquiry turns. See also *Sprague v. Sprague,* 131 *N. J. Eq.* 104, 107 (*E. & A.* 1942). These cases also emphasize that such an intention may not be conditioned upon the happening of a future event.

The appellant's contention is that her husband was incapable of forming the requisite intent for acquiring a domicile of his choice prior to October 16, 1953, when he received a permanent immigration visa. There is sufficient evidence of the actual intent prior to this date of her husband's *animus manendi,* but appellant's point is based upon the theory that respondent's intentions were necessarily conditional because his presence in the United States was based upon a temporary visa requiring periodic renewals by a governmental agency. While appellant's argument seems

at first blush to be logically effective, such an argument loses its strength upon a closer inspection both of respondent's provisional "treaty trader" visa and of the legal requisites of establishing a domicile of choice.

It seems clear that at all times prior to October 16, 1953, when he obtained an immigration visa, plaintiff was in this country under a visitor's visa (see 8 *U. S. C. A.* § 1101(*a*)(15)(*B*)). A visitor or one eligible for a visitor's visa is defined in the foregoing section as follows:

"An alien * * * having a residence in a foreign country *which he has no intention of abandoning and who is visiting the United States temporarily for business or temporarily for pleasure.*" (Emphasis added)

To qualify for admission as a temporary visitor, an alien must establish:

"(1) that he has a residence in a foreign country which he has no intention of abandoning;

\* \* \* \* \* \* \*

(3) that he intends to remain in the United States temporarily;

(4) that he intends in good faith and will be able to depart from the United States at the expiration of a temporary stay." *Besterman, Commentary on the Immigration and Nationality Act,* 8 *U. S. C. A. VIII,* 37 (1953)

The question thus presented is whether plaintiff could be deemed to have established a legal domicile for divorce jurisdictional purposes in the State of New Jersey during the period when he was in this country as a temporary visitor on such a visitor's visa. In view of the fact that respondent was able to obtain periodic extensions of his "trader's" visa and thereby did remain in the United States (and—as found by the trial court—more particularly within the jurisdiction of this court), his intention was believably probable. Certainly, the best evidence of one's intention is the fact of compliance and the only factor which might render such an intention inoperative would arise where respondent's resolution to make New Jersey his permanent home would make his presence under the provisional visa illegal, so that his presence within the State "in violation

of the immigration laws will not be considered as residence." 2 *Nelson, Divorce and Annulment* (2d ed.), § 21.27, *p.* 670. See also *Buscema v. Buscema*, 20 *N. J. Super.* 114, 115 (*Ch. Div.* 1952).

But such is not the case here since under the doctrine of *Brownell v. Gutnayer*, 94 *U. S. App. D. C.* 90, 212 *F. 2d* 462, 464 (*D. C. Cir.* 1954), the "intention to remain permanently in the United States did not make it unlawful for him to enter the United States 'as a non-immigrant.'" Respondent's continued presence in this country based upon his ability to obtain a provisional visa (which was actually under *Title 8, "Aliens and Nationality,"* the then *section* 203, *subsection* (2), "temporarily for business or pleasure" but theoretically based upon *subsection* (6) for the purpose of carrying on trade since there was absent a United States-Dutch treaty) and periodic renewals thereof because of his substantial business interests both at home and abroad and the trade between the two countries rebut any inference that he qualified his intention.

It would seem that appellant is confusing her husband's domicile with his capacity for naturalization. As the court said in *Petition of Wong Choon Hoi,* 71 *F. Supp.* 160, 161 (*D. C. S. D. Cal.* 1947), appeal dismissed, *Carmichael v. Wong Choon Hoi,* 164 *F. 2d* 696 (9 *Cir.* 1947):

"These decisions are to be respected as determining the character of residence for which petitioner was admitted. The fact that Chinese persons were ineligible for naturalization until the 1943 amendment cannot affect the character of that residence. *Petition of Chi Yan Cham Louie, D. C. W. D. Wash.*

Long before the Nationality Act of 1940 Chinese merchants admitted to engage in business here pursuant to the Treaty of 1880 were referred to as 'domiciled' in this country. [*Cheung Sum Shee v. Nagle, supra,* 268 *U. S.* 336, at *page* 344, 45 *S. Ct.* 539, 69 *L. Ed.* 985; *United States v. Mrs. Gue Lim,* 1900, 176 *U. S.* 459, 20 *S. Ct.* 415, 44 *L. Ed.* 544; *Lau Ow Bew v. United States,* 1892, 144 *U. S.* 47, 12 *S. Ct.* 517, 36 *L. Ed.* 340; *Wong Yow v. Weedin,* 9 *Cir.* 1929, 33 *F. 2d* 377; *Woo Hoo v. White,* 9 *Cir.* 1917, 243 *F.* 541.]

"The term 'residence', as used in the naturalization statutes, is practically synonymous with 'domicile', [*Petition of Wright, D. C. E. D. Mich.,* 1941, 42 *F. Supp.* 306, 307; *United States v. Parisi, D. C. Md.,* 1938, 24 *F. Supp.* 414, 419; *Petition of Oganesoff,*

D. C. S. D. Cal. 1927, 20 F. 2d 978, 980 ; *United States v. Shanahan*, D. C. E. D. Pa. 1916, 232 F. 169, 172.]"

In *Nelson, Divorce and Annulment, supra*, we find (*p.* 670) :

"One need not be a citizen of the United States unless the local statute so requires, in order to meet the residence requirements for purposes of divorce."

Nelson cites the cases of *State ex rel. Duckworth v. District Court of Seventeenth Judicial Dist.,* 107 *Mont.* 97, 80 *P.* 2d 367 (*Sup. Ct.* 1938), and *Townsend v. Townsend,* 176 *Misc.* 19, 26 *N. Y. S.* 2d 517 (*Sup. Ct.* 1941). In the latter case the court held that where a husband and wife, British subjects, were in New York under temporary visas, they were nevertheless domiciled there for the purposes of the wife's suit for separate maintenance. In *Greiner v. Bank of Adelaide,* 176 *Misc.* 315, 26 *N. Y. S.* 2d 515, 516 (*Sup. Ct.* 1941), the court stated:

"The answering papers [charge] that the plaintiff is here under a visitor's visa, which is of limited duration and which necessarily prevents him from establishing a residence in the United States.
\* \* \* \* \* \* \* \*
The mere fact that plaintiff arrived under a temporary visa is not enough to prevent him from becoming a resident of this state. *It is his actual place of abode which is determinative.*" (Emphasis added)

In *Taubenfeld v. Taubenfeld,* 194 *Misc.* 505, 87 *N. Y. S.* 2d 866 (*Sup. Ct.* 1949), the trial court, after pointing out that the word [as in New Jersey] "resident" for divorce jurisdictional purposes is synonymous with "domiciliary," held that an alien admitted into this country on a transit visa could not be heard to assert that he had established a domicile herein, following the decision in *In re Gaffney's Estate,* 141 *Misc.* 453, 252 *N. Y. S.* 649 (*Surr. Ct.* 1930). On appeal the Appellate Division rejected this view, holding that the mere fact that plaintiff entered the United States on a transit visa is not of itself a fatal bar to his establishing the fact that he is domiciled here, *Taubenfeld v. Taubenfeld,* 276 *App. Div.* 873, 93 *N. Y. S.* 2d 757 (*App. Div.* 1949),

leave to appeal denied, 276 *App. Div.* 918, 94 *N. Y. S. 2d* 827 (*App. Div.* 1950). The result appears to have been subsequently adhered to in *Jacoubovitch v. Jacoubovitch,* 279 *App. Div.* 1027, 112 *N. Y. S. 2d* 1 (*App. Div.* 1952), leave to appeal denied 279 *App. Div.* 1078, 113 *N. Y. S. 2d* 446 (*App. Div.* 1952), where the parties were admitted on "non-immigrant visas in connection with defendant's employment in this State for the United Nations."

The best and most trustworthy evidence of intention is to be found in plaintiff's acts. *Firth v. Firth,* 50 *N. J. Eq.* 137, 142 (*Ch.* 1892); *Sweeney v. Sweeney,* 62 *N. J. Eq.* 357, 359 (*Ch.* 1901); "What constitutes residence or domicile within state for purposes of jurisdiction in divorce," 106 *A. L. R.* 6, 15, 38; see also chapters *III–VII* on *"Criteria of Domicile"* in *Kennan on Residence and Domicile;* and *District of Columbia v. Murphy,* 314 *U. S.* 441, 457–458, 62 *S. Ct.* 303, 86 *L. Ed.* 329, 338–339 (1941). The trial court took into consideration all the facts which would establish plaintiff's intention to remain—his numerous visa extensions, the establishment of a prosperous business, his asserted assumption that he had the status of a "treaty trader," his action in placing himself, his wife and her daughters on the immigration quota list, and his attempt to purchase a home for his family in Asbury Park—and a trial record replete with "contradiction, controversial, disputable contentions." He then made his finding that plaintiff had met the residence requirement of the statute. We find no basis for the exercise of our right to make a new or amended finding. *R. R.* 1:5–4(*b*); *Schack v. Trimble, supra* (48 *N. J. Super.,* at *page* 52).

As to appellant's second contention that under the rule of *Johnson v. Johnson,* 65 *N. J. Eq.* 606 (*Ch.* 1903), the separation of the parties by reason of her suit and his counterclaim in Holland upon the grounds of adultery suspended the running of the asserted period of desertion, it should be noted that such is not an absolute rule but merely an evidentiary presumption which is subject to being rebutted. It is true that as far back as the opinion by Chancellor Green

in *Marsh v. Marsh,* 14 *N. J. Eq.* 315 (*Ch.* 1862), the presumption must be that, if a wife absents herself from his home pending a divorce suit against her, such separation is by his procurement or with his assent. Since a presumption exists, such consent is inconsistent with the element of "obstinacy" and none of the time occupied by the pendency of another suit or counterclaim for divorce against the same person may be computed as part of the necessary two-year period of desertion.

In *Cook v. Cook,* 97 *N. J. Eq.* 264, 267 (*Ch.* 1925), the court emphasized that "it is a mere presumption, (not a conclusive presumption) and therefore, that it may be rebutted and overcome. * * * it [is] a rule of evidence to be weighed in with all the other facts and circumstances of the case." In *Hall v. Hall,* 60 *N. J. Eq.* 469, 470 (*E. & A.* 1900), Justice Gummere stated: "That a desertion, in order to be obstinate, must be persisted in against the willingness of the injured party to have it concluded * * *."

Here, the trial court found that defendant willfully separated from plaintiff when she left the United States on November 7, 1952, that the separation continued even up to the date of his oral opinion, January 25, 1957, that the separation was obstinate on the part of defendant, that any further efforts on the part of plaintiff to become reconciled with defendant would be futile, and therefore plaintiff was not required to undertake any such efforts. *Galoppa v. Galoppa,* 110 *N. J. Eq.* 481, 482–483 (*E. & A.* 1932); 9 *N. J. Dig., Divorce* ☞37(7) *et seq., page* 534 *et seq.* We must take it, from the way the issue is brought before us, that factually she was obstinate in the desertion—that is that plaintiff really wanted her to live with him regardless of his counterclaim in the Dutch suit. That being so, we think the presumption of a lack of obstinacy, created by the counterclaim, is rebutted. *Jacobs v. Jacobs,* 100 *N. J. Eq.* 482, 485 (*Ch.* 1927); 1 *Herr, Law of Marriage, Divorce and Separation in New Jersey,* § 205, *p.* 225 (1938); and *"New Jersey Practice,"* § 710, *p.* 69, on *"Effect of Pendency of Former Proceedings."*

 We feel that the record sustains the trial court's finding that the running of the desertion period is not tolled by the Holland action since "every intendment is in favor of the judgment under review, and we should not disturb the court's finding of fact unless we are well satisfied that the finding is a mistaken one." *Capone v. Norton,* 11 *N. J. Super.* 189, 193 (*App. Div.* 1951), affirmed 8 *N. J.* 54 (1951); 5 *C. J. S. Appeal & Error* § 1533, *p.* 262.

 We consider, finally, appellant's last ground that the trial court committed reversible error in not staying, on the ground of comity, the trial of the New Jersey suit since appellant's Holland suit had been brought first. In *Fantony v. Fantony,* 21 *N. J.* 525, 533 (1956), Mr. Justice Oliphant for the Supreme Court stated:

"Comity, in a legal sense, is neither a matter of absolute obligation on the one hand nor of mere courtesy and good will upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience and to the rights of its own citizens or of other persons who are under the protection of its laws. *Hilton v. Guyot,* 159 *U. S.* 113, 16 *S. Ct.* 139, 143, 40 *L. Ed.* 95 (1895); *The Disconto Gesellschaft v. Umbreit,* 208 *U. S.* 570, 28 *S. Ct.* 337, 340, 52 *L. Ed.* 625 (1908). Also see 11 *Am. Jur.* § 5, *p.* 299.

\* \* \* The rule of comity is grounded in the policy of avoiding conflicts in jurisdiction, unless upon strong grounds, and the general principle that the court which first acquires jurisdiction of an issue has precedence, in the absence of special equities."

There is no compulsory duty resting on a trial court requiring it to stay a proceeding pending before it on account of the pendency in another jurisdiction of an action previously instituted by or between the same parties and on the same cause of action. The granting of a stay is discretionary with the trial court, limited only by special equities showing abuse of discretion in that injustice would be perpetrated on the one seeking the stay, and no hardship, prejudice or inconvenience would result to the one against whom it is sought. 19 *A. L. R. 2d* 317. The effect of a pending divorce proceeding as a ground for the abatement of a

second proceeding is governed by the same general principles which determine the question of abatement of one ˙action by reason of the pendency of another. 17 *Am. Jur., Divorce and Separation,* § 215, *p.* 402. Each court is free to proceed in its own way and in its own time without reference to the proceedings in the other court. *Kline v. Burke Const. Co.,* 260 *U. S.* 226, 43 *S. Ct.* 79, 67 *L. Ed.* 226, 24 *A. L. R.* 1077 (1922). The case of *Stultz v. Stultz,* 15 *N. J.* 315 (1954), is clearly distinguishable.

In *Greenberg v. Greenberg,* 11 *N. J. Super.* 582, 595–596 (*Ch.* 1951), the court said:

"Defendant moves to abate the within action because of the pendency of the New York action. Both actions are between the same parties and are substantially alike. That motion must be denied. It is settled law in this State that the pendency of another action, either at law or in equity, in another state is no bar to the prosecution of a like action in this State between the same parties. The rule is laid down that where such actions are brought 'the defendant who is harassed by successive suits in different jurisdictions may apply to the court in which the subsequent suit is brought for relief, and the court may, in its discretion, stay proceedings, or refuse to permit final judgment until the prior suit has been determined.' *Mumford v. Ecuador Development Co.,* 50 *A.* 476 (*Ch.* 1901, not officially reported) ; *Fulton v. Golden,* 25 *N. J. Eq.* 353 (*Ch.* 1874) ; *Kerr v. Willetts,* 48 *N. J. L.* 78 (*Sup. Ct.* 1886) ; *Fairchild v. Fairchild,* 53 *N. J. Eq.* 678 (*E. & A.* 1895) ; *Mennonna v. Pennsylvania R. R. Co.,* 5 *N. J. Misc.* 233 (*Sup. Ct.* 1927)."

The trial court, on the motion for a stay made on the opening day of the trial, April 5, 1956, took into consideration the time which had elapsed since the filing of defendant's suit in Holland on December 31, 1952, the fact that her Dutch suit had not yet been tried, the filing date of the plaintiff's present suit and, in denying the stay, remarked: "the court following its general practice is solicitous of its own calendar and is mindful that litigation should be expeditiously handled with due respect to the other rights of the respective parties." We feel the trial court properly exercised its discretion in not granting the stay.

Affirmed without costs.