**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0799-20

IVAN BILBAO LA VIEJA,

    Plaintiff-Appellant,

v.

ALEJANDRA BILBAO LA VIEJA,
n/k/a ALEJANDRA MERILES,

    Defendant-Respondent.

_____

        Submitted February 8, 2022 – Decided September 6, 2022

        Before Judges Fisher and Smith.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-1462-13.

        Laufer, Dalena, Jensen, Bradley & Doran, LLC, attorneys for appellant (James C. Jensen, of counsel and on the briefs).

        Alejandra Bilbao La Vieja, respondent pro se.

PER CURIAM

Plaintiff, Ivan Bilbao La Vieja, appeals from the Family Part's October 29, 2020 Judgment of Divorce (JOD). He challenges the trial court's rulings regarding parenting time, custody, alimony, and its order that the parties' children have no contact with his brother, Limbert Bilbao La Vieja. We affirm.

I.

We take the following facts from the record. Ivan[1] and defendant, Alejandra Bilbao La Vieja, were married on September 18, 2005. The parties' first daughter, Rocio, was born in 2006. Their second daughter, Aliyah, was born in 2008. Alejandra had two children prior to the marriage.

The breakdown of the parties' marriage began in March 2013 when Alejandra's daughter, S.S. (Sally)[2], reported that Limbert had sexually molested her starting when she was eleven years old.[3] At the time, Alejandra was unaware

---

[1] Because the parties and some of the witnesses share a surname, we refer to them by their first names. No disrespect is intended.

[2] We use a fictitious name to protect the privacy of the victim. R. 1-38-3(d)(10).

[3] A grand jury indictment, indictment number 16-05-4165, charged Limbert with one count of second-degree sexual assault, and one count of third-degree endangering the welfare of a child. The negotiated plea agreement between the State and Limbert called for the Morris County Prosecutor's Office to recommend dismissal of the most serious charge in exchange for Limbert to plead guilty to the third-degree charge, which was amended to a petty disorderly person's offense of harassment.

A-0799-20

of Limbert's criminal history.[4]  She ultimately discovered this information through a Google search, as Ivan failed to inform her of his brother's New York sex offense conviction and status as a registered sex offender.

Unsurprisingly, Alejandra became concerned when Ivan told her he was taking their children, Rocio and Aliyah, to his parents' residence in New York City, which is where Limbert was residing.[5]  This led Alejandra to call the police, inform the Division of Child Protection and Permanency (DCP&P), and obtain a no contact order from the court prohibiting the children from visiting with Limbert.  Ivan filed for divorce shortly thereafter in May 2013.

Between May 2013 and the start of trial in August 2018, the court appointed a child custody expert, Dr. David S. Gomberg, to conduct an evaluation and prepare a report.  Dr. Gomberg conducted an initial evaluation in 2014 and an updated evaluation in 2017.

---

[4]  Limbert Bilbao La Vieja was convicted in New York State for violating New York Penal Law 235.22; disseminating indecent materials to minors, a class E felony.  He is subject to New Jersey's annual registration requirements for sex offenders under Megan's Law, N.J.S.A 2C:7–1 to -23.

[5]  This was the same address where the search warrant had been executed many years before, uncovering the child pornography that was the subject of Limbert's conviction.

A-0799-20

Via mediation in 2015, the parties partially agreed that Alejandra would pay Ivan $350 per month in child support, Ivan would pay Alejandra $1200 per month in spousal support for a term of three-and-a-half years, and the children would have no contact with Limbert. Prior to the JOD, no child support or alimony payments were made by either party.

The mediation agreement also set forth a "9-to-5" parenting time schedule, meaning that in a two-week period Ivan would have nine overnights with the children and Alejandra would have five. Alejandra agreed to this schedule in part because of the time commitments of her work as an advanced level nurse.

An October 5, 2016 court order confirmed this parenting time arrangement on a pendente lite basis and designated Ivan as the parent of primary residence (PPR). The agreement and court order granted Ivan residential custody of the girls, as well as legal custody for medical and extracurricular decisions. For all other decisions, such as religious and educational, the parties shared custody.

These parenting time and custodial arrangements were in line with Dr. Gomberg's recommendations. However, the 2015 mediation agreement was only a partial agreement pending the final JOD.

Moreover, on two occasions during the pendency of this litigation Alejandra alleged that Ivan had physically and sexually abused their daughters.

A-0799-20

In 2014 she brought Rocio to the hospital based on blood stains on Rocio's bed sheets. In 2016 Alejandra brought her daughters to two separate hospitals again alleging sexual assault, this time due to rectal bleeding. No evidence of sexual assault was found either time, by the hospitals, the girls' pediatrician Dr. Gabriel Lopez-Allen, DCP&P, or any other agency.

A ten-day trial took place on noncontinuous days starting on August 24, 2018 and ending on April 10, 2019.

Several witnesses testified on behalf of both parties, including Dr. Gomberg, Dr. Lopez-Allen, Ivan's fiancée Christine Judge, Ivan's mother Nancy Bilbao La Vieja, Alejandra's friend and co-worker Loquanda Filipe, Limbert, and both parties. In addition, the court conducted in camera interviews with both children, Rocio and Aliyah.

The 2015 mediation agreement was entered into evidence, as were Dr. Gomberg's reports and a letter from the Morris County Prosecutor's Office regarding Limbert's status as a registered sex offender in New York and New Jersey. The letter disclosed Limbert's previous conviction and confirmed his compliance with Megan's Law.

The trial court set forth its findings of facts and conclusions of law on the record on September 21, 2020 and October 5, 2020. At the outset, the court

5

found it "extremely unlikely" that "the parties will ever be able to communicate, cooperate and agree in matter concerning the best interest of their daughters."

The court found the majority of Ivan's testimony to be credible, except for his testimony concerning the reasons for the breakdown of the marriage. Ivan cited changes in Alejandra's expectations for why their marriage failed, but the court felt "he came across as rehearsed and . . . unconvinced of his own testimony . . . ." Ivan also "unconvincingly . . . testified to a lack of recollection" which the court determined was a "way to avoid telling the [c]ourt the whole truth with facts not helpful to his positions."

Alejandra's testimony on the breakdown of the marriage was the more convincing account according to the court. She testified that Sally's allegation against Limbert was the predominant cause of the parties' divorce. However, while the court found most of Alejandra's testimony to be credible, it determined her unsubstantiated claims that Ivan abused the children were a "baseless quest to prove that [Ivan] is an abusive parent and thereby gain an advantage in this litigation." There was "no credible evidence" or "basis in fact for those beliefs." Dr. Lopez-Allen also credibly testified that she never had any concern that the children had been abused in any way. Dr. Lopez-Allen further testified that both girls are healthy and that her biggest concern is the emotional stress they suffer

6

from the ongoing acrimony between their parents. She also explained that Rocio has asthma, but that it was under control and therefore she had no concerns about Rocio participating in sports such as soccer.

The court found Ms. Judge's testimony was generally credible, except her comments regarding Limbert. The court found that Ivan had misinformed Ms. Judge about his brother's criminal conduct so her testimony that she was not concerned about him was unreliable. The court concluded that Ms. Judge's incorrect understanding of Limbert's misdeeds is further evidence that plaintiff is incapable and unwilling to supervise his brother.

Regarding the testimony of Nancy, Ivan's mother and the paternal grandmother of the girls, the court found that she similarly "minimizes, and even denies, her son Limbert's criminal conduct." As such, it was clear to the court that Nancy "cannot be relied upon to supervise Limbert."

Dr. Gomberg's testimony and reports revealed similar concerns about Limbert. The court found Dr. Gomberg's testimony to be "credible in all respects[,]" noting that he is "highly-qualified to conduct custody and parenting time evaluations and to render opinions on custody and parenting time issues."

The court highlighted several parts of Dr. Gomberg's testimony. In particular, the court emphasized his assessment that Alejandra is "unlikely to

7

stop making frivolous allegations about the plaintiff abusing the children" and that Ivan and his family are in "strong denial about the potential dangers that Limbert poses to the children and cannot be trusted to supervise Limbert." Dr. Gomberg made specific recommendations for custody and parenting time, many of which were reflected in the mediation agreement and pendente lite court order. This included the 9-to-5 schedule, sole legal custody for Ivan over medical and extracurricular activities, shared custody for educational and religious decisions, and making Ivan the parent of primary residence.

When Alejandra cross examined Limbert, the court paid close attention to his demeanor and responses. Limbert testified that his contact with Alejandra's daughter Sally "could have been a hug and a kiss." The court "did not find his testimony . . . on that to be credible at all" because "[h]e was being evasive and untruthful" in an "attempt to minimize his conduct." When Limbert denied any contact with Rocio and Aliyah, the court did not make a specific finding on his veracity; instead, the court simply found that there was no credible evidence to contradict his denial.

Ultimately, the court found that "Limbert does pose a risk to minor children generally," and that "certainly includ[es] Rocio and Aliyah." And that

A-0799-20

it was unlikely "that the plaintiff would effectively supervise his brother Limbert . . . if he were around the parties' two children."

The court made specific findings about Rocio and Aliyah based on the child interviews. The court found them to be truthful and credible, providing sincere and genuine responses about their wishes to have equal time with both parents. The judge underscored that "[b]oth girls told me that their preference is to spend equal time with each parent." "The children recognize[d] that their father would be disappointed by a decrease in his parenting time, but that did not change their expressed preference in any way."

The court evaluated whether Alejandra's unfounded accusations caused the girls significant emotional harm. It found that the allegations did not have "any significant adverse effect on either child or their relationship with their father." The court's "take away," based on the interviews, was that the girls "view their mother's claims . . . along the lines of oh, that's just my crazy mother who hates my father." But the court did find, overall, that "the emotional warfare between the parents has harmed the children."

Finally, the court addressed all of the "best interest" factors set forth in N.J.S.A. 9:2-4. It made specific findings on each one and determined "that the

preference of the children for equal parenting time should be given great weight." Specifically, the court explained that

> [e]qualizing parenting time [would] be a great comfort to both girls and [would] ease some of the pain inflicted on them by their parents' mutual and ceaseless animosity. It is certainly what they, the children, want. Most importantly, increasing the girls' residential parenting time with their mother is in their best interest. It will not expose them to harm. [Alejandra], as I said before, is a good, caring and loving mother when it comes to the girls. [Her] failings, her irrational and vindictive charges against [Ivan], are directed at [him]. And as I've already found, they have not had a significant impact on the girls themselves . . . . [The girls] love their father and they have a good relationship with him . . . . A modest decrease in plaintiff's parenting time will not change that.

The court's conclusion on this factor, and decision to give it great weight, diverged from Dr. Gomberg's recommendations. It found that Dr. Gomberg had given insufficient weight to the children's preference in making his recommendation on residential custody. But the court's decision to order shared residential custody of Rocio and Aliyah and equalize parenting time was not based on this factor alone. It came to this conclusion after a thorough analysis of all the statutory components and a detailed review of the testimony and evidence in the record. Additionally, the court emphasized that if Alejandra made baseless accusations in the future, "that would be a change in

circumstance, or a potential change in circumstance" that could jeopardize her equal parenting time schedule and joint residential custody status.

The court agreed with Dr. Gomberg's legal custody recommendations. It found that Alejandra's "judgment and fitness is compromised when it comes to medical issues and . . . extracurricular activities for the children[;]" therefore, it was in the best interest of the children for Ivan to have "sole legal custody" over these areas.

The court also addressed the mediation agreement. It disagreed with Ivan's contention that the agreement was void from the start and found instead that the agreement was "valid and enforceable."

On the alimony provision, the court did not make specific findings as to the marital standard of living. It explained that it was "simply enforcing the terms of the partial agreement that the parties reached and that was admitted into evidence." Further, the court noted that "but for the alimony provision of the mediation agreement [the court] would not have been able to consider the key factors necessary for an alimony award due to the failures of proof by [Alejandra]."

As to child support, the court found that Alejandra "essentially ignored her agreed-to child support obligation" under the mediation agreement.

 A-0799-20

Nevertheless, the court decided not to retroactively enforce the child support payments because the payments were offset by the amount Ivan owed to her after equitably distributing their assets. It did enforce child support payments going forward and provided that the JOD would "require the parties to exchange . . . current information necessary for Child Support Guidelines calculations and any deviations that either party is seeking, and that will be within 30 days of the date of the [JOD]."

The JOD was entered on October 29, 2020. This appeal follows.

II.
A.

We defer to Family Part judges' fact-finding because of their "special jurisdiction and expertise in family matters," Cesare v. Cesare, 154 N.J. 394, 413 (1998), their "opportunity to make first-hand credibility judgments about the witnesses who appear on the stand[,] [and their] feel of the case that can never be realized by a review of the cold record." N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 342-43 (2010) (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2006)); see also Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016).

We generally defer to factual findings made by family courts when such findings are "supported by adequate, substantial, [and] credible evidence." Ricci

v. Ricci, 448 N.J. Super. 546, 564 (App. Div. 2017) (quoting Spangenberg v. Kolakowski, 442 N.J. Super. 529, 535 (App. Div. 2015)). With this deference, the family courts' findings "will only be disturbed if they are manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence." N.H. v. H.H., 418 N.J. Super. 262, 279 (App. Div. 2011) (quoting Crespo v. Crespo, 395 N.J. Super. 190, 193-94 (App. Div. 2007)).

However, "[w]e owe no special deference to the . . . [court's] legal determinations." Slawinski v. Nicholas, 448 N.J. Super. 25, 32 (App. Div. 2016). We apply "[a] more exacting standard [in] our review of the trial court's legal conclusions," which we review de novo. Thieme, 227 N.J. at 283.

Policy considerations also guide our review. "In custody cases, it is well settled that the court's primary consideration is the best interests of the children." Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007) (citing Kinsella v. Kinsella, 150 N.J. 276, 317 (1997)). In making the determination, a "court must focus on the 'safety, happiness, physical, mental and moral welfare' of the children." Ibid. (quoting Fantony v. Fantony, 21 N.J. 525, 536 (1956)). "In issues of custody and visitation '[t]he question is always what is in the best interests of the children, no matter what the parties have agreed to.'" Ibid.

(alteration in original) (emphasis added) (quoting P.T. v. M.S., 325 N.J. Super. 193, 215 (App. Div. 1999)).

B.

If the child's parents establish a custody arrangement by mutual consent, the court, generally, is required to enter an order consistent with their agreement. See N.J.S.A. 9:2-4(d). However, the court may override an agreed-upon custody arrangement if it is in the child's best interest. If a custody arrangement is ordered that differs from the arrangement agreed upon by the parents, the court must place on the record the factors justifying its decision. See N.J.S.A. 9:2-4(f).

The "primary and overarching consideration" governing a custody determination is the child's best interests. Kinsella, 150 N.J. at 317-18. This best interest standard "protects the 'safety, happiness, physical, mental, and moral welfare of the child.'" Beck v. Beck, 86 N.J. 480, 497 (1981) (quoting Fantony, 21 N.J. at 536). It is presupposed that involvement by both parents is in the child's best interest. See id. at 485. When determining what custodial arrangement will best meet the child's best interest, the court is required to examine, at a minimum, the fourteen factors set out in N.J.S.A. 9:2-4. Establishing a custody arrangement not agreed to by both parents requires the

14

court to "specifically place on the record the factors which justify" the arrangement. See N.J.S.A. 9:2-4(f); see also D.A. v. R.C., 438 N.J. Super. 431, 450 (App. Div. 2014) ("determining what custodial arrangement is in the best interest of a child requires the Family Part judge to apply the statutory factors outlined in N.J.S.A. 9:2-4 . . . and reach a conclusion that is supported by the material factual record.").

## III.

With these guiding principles in mind, we turn to Ivan's arguments on appeal. He asserts the trial court erred for several reasons including: awarding the parties equal parenting time, discounting the testimony of Dr. Gomberg, changing the custody agreement, enforcing the payment of alimony, finding no evidence to deny alimony, and ordering no contact between the parties' children and Limbert Bilbao La Vieja.

First, it is abundantly clear from the record that Rocio and Aliyah should not have contact with Limbert. The trial court found that he "continues to pose" a "very real risk" to the children. We agree, for substantially the same reasons set forth in the trial court's oral opinion, that the girls should have no contact with him whatsoever.

15

Additionally, we discern no abuse of discretion in the judge's order granting the parties joint residential custody and equal parenting time. The judge addressed all the statutory best interest factors individually, and, after analyzing the factors, he focused on the expressed preferences of Rocio and Aliyah to have equal time with their mother. The judge noted the modifications sought were a "slight deviation" from the previous consent orders and, thus, were "reasonable" when viewed in this context. But, more importantly, it found that equal time with both parents was in the children's best interest so that they can continue their healthy, loving relationships with Ivan and Alejandra.

Ivan's argument that the trial court discounted Dr. Gomberg's testimony is meritless. The court may have disagreed with certain aspects, but it carefully reviewed the expert's testimony and his reports, referencing it numerous times throughout the decision.

Ivan also argues that altering the parenting time arrangement was unjustified and that a change of circumstance finding was required to change the custody agreement. These contentions are similarly unpersuasive. The court determined that equal parenting time was in the children's best interest. Moreover, so long as the court places on the record, as Judge Hanna did here,

16

the factors justifying its decision, a court may alter a custody arrangement agreed upon by the parents. See N.J.S.A. 9:2-4(f).

Lastly, we address Ivan's challenge to the alimony award. He asserts that the court erred in enforcing the alimony agreed to in the mediation after finding the agreement was not void from the start due to the parties' noncompliance. Furthermore, he argues that the court failed to make requisite findings on the marital standard of living in order to enforce the alimony award.

We disagree. As the trial court carefully articulated, it was not required to make specific findings on the standard of living because it was not awarding alimony, it was merely enforcing a prior agreement. A settlement agreement between the parties to a divorce will be enforceable as long as it is fair and just. Petersen v. Petersen, 85 N.J. 638, 642 (1981). Accord N.H., 418 N.J. Super. at 279. The court found that the agreement was fair and reasonable as there was no "misrepresentation of a then existing, or a past fact[,] . . . no detrimental reliance[,]" and "no fraud in the inducement."

Thus, the court concluded there was no basis for finding that the agreement was void. We discern no basis for disturbing this decision, but we note that alimony is open to modification on motion when there is a change in

A-0799-20

circumstance that warrants the adjustment.  See Rolnick v. Rolnick, 290 N.J.

Super. 35, 46 (App. Div. 1996).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION