# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3918-15T2

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

J.J.,

      Defendant-Appellant,

and

J.B. and T.M.,

      Defendants.

_____

IN THE MATTER OF S.B., M.B.,
and E.B.,

      Minors.

_____

Argued October 4, 2018 – Decided March 1, 2019

Before Judges O'Connor, Whipple and DeAlmeida.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FN-02-0136-14.

John L. Weichsel argued the cause for appellant.

Victoria Kryzsiak, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Jason W. Rockwell, Assistant Attorney General, of counsel; Victoria Kryzsiak, on the brief).

Olivia Belfatto Crisp, Assistant Deputy Public Defender, argued the cause for minors (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Olivia Belfatto Crisp, on the brief).

PER CURIAM

Defendant J.J. (father) appeals from the March 8, 2016 order denying his application for physical custody of his son, E.B. (Eric), presently age fourteen.[1] Defendant J.B. (mother) is Eric's mother. After reviewing the record and applicable legal principles, we affirm in part, reverse in part, and remand for further proceedings.

I

Plaintiff New Jersey Division of Child Protection and Permanency (Division) has been involved with the parties for a number of years, which has

---

[1] We use initials and pseudonyms to protect the privacy of the parties and their son.

included investigating allegations of abuse and neglect pertaining to Eric and the mother's three children from another relationship, Eric's half-siblings.[2] Eric is the father's only child. The mother, Eric, and Eric's half-siblings have lived in the same household from the time of Eric's birth.

Eric has significant emotional problems and is deemed emotionally disturbed. He has an anxiety disorder that has been determined to be severe and causes him to experience, among other things, separation anxiety. He attends a school for children who have emotional difficulties. In 2013, the Division received referrals about the children's hygiene, their chronic tardiness at school, and the mother's mental health. The Division investigated and established both parents had committed acts of neglect. The Division provided in-home services to the mother to assist her with parenting.

In July 2013, the father filed a complaint seeking custody of Eric. Among other things, the father alleged the mother alienated Eric from him. Up until 2013, the father enjoyed regular and frequent parenting time with his son. In October 2013, the Division filed an order to show cause and complaint for care and supervision of Eric and his three half-siblings.

---

[2] Defendant T.M. is the father of Eric's half-siblings. The claims against T.M. are not the subject of this appeal.

A-3918-15T2

The court granted the order to show cause, which included directing that Eric remain in the mother's physical custody because he had become increasingly resistant to seeing his father. Evaluations of the parties and children and various services designed to restore Eric's relationship with his father were ordered. However, Eric steadfastly refused to engage in visitation with his father over the next three years. The Division attempted supervised visitation of the father and Eric, but to no avail. According to a Division worker, during one such visit, the child was "sobbing" and appeared to be "in torture."

In August 2014, the court suspended the father's obligation to pay the mother child support in an effort to induce her to cease alienating Eric from the father and to encourage her to facilitate parenting time between them. The court subsequently modified that order, directing half of such child support be paid to the mother and the other half deposited into a trust account.

In December 2014, the court commenced a hearing on the father's application for physical custody of Eric, which was conducted on sporadic dates throughout 2015 and concluded in January 2016. During the hearing various experts testified. All agreed the mother had alienated the child from the father; the issue was whether the appropriate remedy was to transfer Eric to

4

his father's physical custody. The father's expert, Linda J. Kase, L.C.S.W., opined the only remedy was to transfer Eric to the father's sole physical and legal custody, and sever all contact between the mother and child until the mother had engaged in therapy with an "alienation aware" therapist and the therapist certified the mother understood her conduct had constituted child abuse. Kase did not meet with and examine Eric.

Other experts testified Kase's recommendation was too extreme in light of Eric's mental health problems, and instead recommended continued therapy and gradual exposure to the father to help Eric overcome his reluctance to interact with him. One of those experts was Eric's therapist, William M. Shea, III, Ph.D., who testified transferring custody of Eric to his father would be "traumatic" for Eric and send him into "a total panic," because Eric would be separated from his mother and siblings. Shea was also concerned Eric may run away if placed in his father's home, which would be especially problematic because the father lives in Maryland. However, Shea also testified the child was progressing in therapy and was able to tolerate discussing his father, when in the past he had refused to do so. Shea was also of the opinion it was time to "turn up the pressure a little bit on [Eric]."

5

Psychiatrist Sonia Oquendo, M.D., agreed with Kase's assessment the mother sabotaged the relationship between the father and child. Oquendo acknowledged she is not an expert in alienation, but did render – and there was no evidence she was without expertise to do so – the following opinion. After examining Eric, she determined he would experience "tremendous anxiety" if forced to live with his father. Being separated from his mother, siblings, therapist, and current school would be a "trauma-like experience." To relieve his anxiety, Eric might run away or engage in conduct potentially dangerous to himself. She recommended a gradual approach to reestablishing a relationship with the father, starting with texting, telephone conversations, and then visits.

At the conclusion of the hearing, the court found the mother had engaged in conduct designed to alienate Eric from his father. However, the court accepted and relied upon the testimony of those experts who concluded Eric's mental health problems precluded him from being placed in his father's immediate custody, given Eric would suffer significant anxiety and trauma, and might engage in conduct that would be injurious to himself. Therefore, because it was not in Eric's best interests, the court denied the father's application for physical custody, entering an order to that effect on March 8, 2016. It is from this order the father appeals.

A-3918-15T2

In addition, the order suspends the father's obligation to pay child support to the mother. Instead, the father must deposit the child support payments that would have otherwise gone to the mother into an interest-bearing account. The money in such account is to be used for Eric's post-secondary education but, if Eric does not visit his father by his senior year in high school the father may, at his discretion, withhold such funds from Eric.

## II

On appeal, the father raises the following points for our consideration:

> POINT I - ALLOWING ALIENATING PARENT TO RETAIN SOLE CUSTODY WAS ABUSE OF DISCRETION; COURT OVERLOOKED CONTINUING EMOTIONAL AND PHYSICAL ABUSE OF CHILD.

> POINT II - COURT ABUSED DISCRETION IN RELYING SOLELY ON EXPERTS TO DETERMINE CUSTODY; EXPERTS AGREED CUSTODY TRANSFER MIGHT BECOME NECESSARY.

> POINT III - COURT ABUSED DISCRETION IN OVERLOOKING FACTORS UNDER N.J.S.A. 9:2-4(C), I.E., DYSFUNCTIONALITY OF HOME, FATHER'S FITNESS, PRIOR RELATIONSHIP AND ABUSE OF CHILD.

> POINT IV - COURT FAILED TO ENFORCE ORDERS AGAINST ALIENATING PARENT WHO WAS IN CONTINUOUS CONTEMPT.

A-3918-15T2

POINT V - ORDER CUTTING OFF CHILD SUPPORT WAS INEFFECTUAL WHERE IT PREVIOUSLY FAILED TO RESTORE VISITATION WITH FATHER; COURT SHOULD HAVE MAXIMIZED VISITATION.

POINT VI - COURT ERRED IN APPLYING NON-BINDING NEW YORK LAW WHILE DEVIATING FROM NEW JERSEY ALIENATION CASES. (Not raised below).

POINT VII - IN FAILING TO PROVIDE ANY REMEDY, COURT EFFECTIVELY TERMINATED FATHER'S RIGHTS, DEPRIVING HIM OF CONSTITUTIONALLY MANDATED RELATIONSHIP WITH CHILD.

Appellate review of family court decisions is limited. N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012). "[F]indings by [a] trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Id. at 413; see also F.M., 211 N.J. at 448 (noting the cold record may not adequately convey what happens in a courtroom). Such deference is especially warranted when custody issues are present. See Abouzahr v. Matera-Abouzahr, 361 N.J. Super. 135, 157 (App. Div. 2003) (citing DeVita v. DeVita, 145 N.J. Super. 120, 123 (App. Div. 1976)).

A trial court's conclusions on custody are "entitled to great weight and will not be lightly disturbed on appeal." DeVita, 145 N.J. Super. at 123 (citing Sheehan v. Sheehan, 51 N.J. Super. 276, 295 (App. Div. 1951)). Of course, deference is not appropriate if the trial court's findings "went so wide of the mark that a mistake must have been made." N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007).

After reviewing the record and applicable legal principles, for substantially the reasons set forth in its comprehensive written opinion, we affirm the trial court's decision to reject the father's application for custody. The court placed "great weight" upon the testimony of those experts who warned against removing the child from his mother's physical custody. The court had the discretion to rely on these experts' opinions to inform its decision. See Bisbing v. Bisbing, 230 N.J. 309, 336 (2017) (noting courts rely heavily on the expertise of psychologists and other mental health professionals when determining in a custody matter what is in the best interest of the child (citing Kinsella v. Kinsella, 150 N.J. 276, 318 (1997))). There is ample, credible evidence in the record to support the trial court's decision to reject the father's request for custody at this time.

A-3918-15T2

We do not condone the mother's actions to alienate the child from his father. What she did is reprehensible. But Eric's best interests must govern. "[T]he primary and overarching consideration [in an action for custody] is the best interest of the child." Kinsella, 150 N.J. at 317 (1997) (citing Fantony v. Fantony, 21 N.J. 525, 536 (1956)). Eric is an emotionally fragile child and there is compelling evidence being separated from his mother and siblings will cause him to suffer serious harm. Under the unique circumstances of this case, we agree placing Eric in his father's custody is not a remedy that furthers this child's best interests.

We considered the points the father asserts on appeal and, with the exception of one, determined they do not merit discussion in a written opinion. R. 2:11-3(e)(1)(E). However, we do part company with the trial court's decision to withhold child support payments from the mother. We understand the court was endeavoring to induce the mother to encourage contact between Eric and the father by withholding child support from her, but child support belongs to the child and is for his benefit.

"The purpose of child support is to benefit children, not to protect or support either parent. Our courts have repeatedly recognized that the right to child support belongs to the child, not the custodial parent." J.S. v. L.S., 389

N.J. Super. 200, 205 (App. Div. 2006). Moreover, here, Eric cannot be blamed for his mother's deplorable, inexcusable conduct. Although the child support has been deposited into an account for Eric's benefit in the future, the difficulty with such remedy is Eric is entitled to support now, not to mention, depending on the circumstances, the father may not be responsible for contributing toward the cost of attending college. See generally Newburgh v. Arrigo, 88 N.J. 529, 545 (1982) (setting forth the factors to be considered when evaluating a claim for contribution toward college). Therefore, the child support to which he is now entitled should not be used to create a fund for college.

The trial court is not without remedies to force the mother to encourage Eric to reconnect with and enjoy a relationship with his father, see R. 1:10-3 and R. 5:3-7(a), but withholding child support is not one of them. Rule 5:3-7(a)(2) provides economic sanctions may be imposed upon a party who has violated a custody or parenting time order. Rule 5:3-7(a) does not state a child may be sanctioned. By withholding child support, in effect the child is being punished. There are other remedies available to incentivize the mother to facilitate a relationship between Eric and his father.

11

Accordingly, we reverse and vacate those provisions of the March 8, 2016 order pertaining to child support. We remand this matter to the trial court so that it can enter an order stating the father shall resume paying child support directly to the mother. More important, the court shall determine and implement forthwith those remedies permitted by law that will enable Eric to repair and restore his relationship with his father. Of course, those remedies antithetical to Eric's best interests may not be used.

We leave to the court's discretion to determine whether it requires an update from Eric's current therapist[3] or other information, including but not limited to an interview of Eric, to decide how best to accomplish the goal of reuniting Eric with his father. The court must also conduct case management conferences every thirty days to evaluate the progress Eric is making to reestablish his relationship with his father.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] We were informed during oral argument that Shea has died.