**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1362-23

T.S.,

    Plaintiff-Appellant,

v.

D.K.,

    Defendant-Respondent.

_____

Submitted March 4, 2025 – Decided May 30, 2025

Before Judges Perez Friscia and Bergman.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FM-07-0770-15.

T.S., appellant pro se.

D.K., respondent pro se.

PER CURIAM

Plaintiff T.S.[1] appeals from a Family Part order entered after a two day hearing granting defendant D.K.'s motion to compel plaintiff to reimburse her for one-half of the educational and medical expenses for their daughter, M.S. (Mary), denying plaintiff's application for fifty percent parenting time with Mary, and further denying his application to compel Mary to attend reunification therapy. We affirm.

I.

In 2015, the parties were divorced by a Dual Final Judgment of Divorce which incorporated a Marital Settlement Agreement (MSA). In 2017, the parties modified the MSA by a consent order, which incorporated a Modification Agreement (MA). The MA stated in pertinent part that "the parties shall share the cost of the children's extra-curricular expenses in proportion to their pro rata share of income." The MA stated the parties share of income to be fifty percent each. The MA further defined extracurricular activities as "academic, sports, music, religious and other activities relating to the children." In a 2020 consent order the parties agreed to share equally in the children's unreimbursed medical and extracurricular expenses.

---

[1] We use initials and pseudonyms for the parties and child to protect the confidentiality of these proceedings. R. 1:38-3(d)(1) and (13).

In September 2022, defendant moved to enforce plaintiff's child support obligation, to compel him to pay accrued child support arrears, and to reimburse her for medical and educational related costs she incurred in 2022 for Mary. Plaintiff filed a cross-motion seeking over twenty points of relief. In relevant part concerning this appeal, he moved to compel Mary to attend reunification therapy and for the court to grant him fifty percent of the available parenting time with her.

The trial court heard argument on December 16, 2022. The court entered an interim order on December 23. In its order, the court set out discovery provisions, granted defendant's motion enforcing child support, ordered plaintiff to pay defendant $2,283.22 in child support arrears within twenty days, denied plaintiff's application to pay child support directly to the children, temporarily ordered plaintiff and Mary to engage in family counseling, and reserved the remaining issues for a plenary hearing on May 16, 2023. The trial court further ordered defendant to provide plaintiff with a copy of all medical bills and explanation of benefits (EOB)[2] forms within fifteen days, to exchange settlement proposals, and participate in mandatory mediation prior to the hearing.

---

[2] An Explanation of Benefits (EOB) is a document sent by a health insurance company to a customer after a medical claim has been processed.

A-1362-23

The parties were unable to resolve any of the contested issues through mediation. On May 16 and July 18, the trial court convened a plenary hearing Both parties were self-represented, and both testified. Concerning Mary's medical expenses, defendant testified that pursuant to the court's order of December 16, 2022, she provided plaintiff with both the medical bills and the EOBs for 2022 totaling $1,364 and plaintiff's fifty-percent share equaling $682. Defendant submitted an exhibit in evidence[3] which listed the medical bills plaintiff incurred for Mary and the outstanding amount owed by plaintiff.

As to unreimbursed educational expenses, defendant testified she emailed plaintiff on July 25, 2022 regarding the need to hire a financial aid consultant to assist with obtaining maximum financial aid for Mary's college costs. Defendant testified she exchanged emails with plaintiff regarding the college expense and financial aid issues. She testified she provided plaintiff with the proofs showing expenses totaling $1,650 and requested plaintiff to pay $825 for his one-half share. She testified in the email exchange, she asked plaintiff whether he agreed to hire a financial aid consultant. He responded that he agreed. Thereafter,

CMS.gov/medical-bill-rights/help/guides/explanation-of-benefits (last visited May 21, 2025).

[3] Defendant did not include this exhibit in her appendix.

A-1362-23

defendant hired a consultant to assist their daughter with the financial aid applications.

Regarding Scholastic Aptitude Test (SAT) tutoring costs, defendant testified she notified plaintiff about Mary's need for a tutor prior to hiring the tutor. Defendant testified plaintiff initially failed to respond to her request but after texting him three times and informing him she had to make a decision concerning the hiring of a tutor, plaintiff responded with the message "so make it." Plaintiff testified that he agreed Mary should engage in tutoring, but he had no idea "from where or who because I have not been involved in the process." In rebuttal, defendant testified that she kept plaintiff involved in the process every step of the way, copying him on all emails exchanged with the tutor including the time Mary spent with the tutor and the total costs incurred. Defendant testified that the total cost of the tutoring was $1,875 with plaintiff's one-half share being $937.50.

Regarding the costs for a college counselor, defendant testified that she discussed the need for a college prep course with plaintiff and informed him of her discussions with the counselor. She testified the cost of the college counselor was $2,500, with plaintiff's one-half share totaling $1,250.

A-1362-23

Regarding the costs of college applications, defendant testified she forwarded plaintiff the email exchanges with the college counselor which listed the colleges Mary should apply to. Plaintiff's response to the emails was "[o]kay. Looks good." Defendant testified that the total costs of the college applications were $865 with plaintiff's one-half share being $432.50.

Defendant stated the total reimbursements she was requesting for all of Mary's costs were $6,980. This total included unreimbursed medical expenses, costs for the financial aid consultant, SAT tutor, college counselor and college application fees. Defendant testified that plaintiff's one-half share was $3,445. In response, plaintiff generally denied that he agreed to pay these costs. He primarily asserted he never participated in the decision-making process concerning the expenses and therefore should not be responsible to reimburse defendant.

At the conclusion of the hearing, the trial court ordered the following:

> 1. Plaintiff shall pay [d]efendant the sum of $3[,]445 for reimbursement of the unreimbursed medical expenses, SAT [t]utoring, [c]ollege [a]pplication [f]ees, [f]inancial [c]onsultant and [c]ollege [c]ounselor [f]ees within [fifteen] days. If [p]laintiff fails to make payment as required, [d]efendant may forward a [c]ertification to the [c]ourt and a copy to [p]laintiff that funds were not reimbursed, and the court may issue a bench warrant.

6

2. Defendant's application for contribution for the costs of driving school is denied.

3. Plaintiff's application for [fifty percent] parenting time and for [Mary] to attend reunification therapy is denied without prejudice. Plaintiff shall attend individual counseling to address his personal issues for a period of at least [six] months. Thereafter, [p]laintiff may make an application for [Mary] to attend reunification therapy and the court will decide the matter.

In its accompanying written decision, the court referenced the parties MSA and the specific provision, which states "the parties shall share the cost of the children's extra-curricular expenses in proportion to their pro rata share of income." The court added that the parties later agreed by way of the consent order of December 7, 2020 that the pro rata share was fifty percent each.

The trial court found on December 16, 2022, it had previously ordered that

defendant shall provide a copy of each medical statement to [p]laintiff along with the [EOB] within fifteen [] days of the [o]rder. Plaintiff shall provide payment for all of the expenses he agrees with within ten [] days thereafter. Any disagreements shall be heard at the time of the [p]lenary [h]earing.

The court found based on the testimony of the parties, it's review of the emails exchanged and its interview with Mary, that it was clear defendant had kept

A-1362-23

plaintiff informed and involved in all stages of the process and "even assisted at times, with the handling of his relationship with [Mary]."

Concerning the expenses defendant was seeking reimbursement, the court found "[d]efendant continued to advise [p]laintiff that he could reach out to any expert selected for any information he needed. Plaintiff did not reach out to anyone, but he was kept informed each step of the way with the exception of the cost for driving school." The court stated in its decision "[w]hat was clear was that [p]laintiff wanted to be involved however, he made sure his responses never include that he would pay for anything." The court further found:

> When asked about his consent to hire the [f]inancial [a]id [c]onsultant, [d]efendant asked him if he had any issue with hiring them and he responded "no". When asked about the SAT [t]utor, he said "[Mary] should get tutoring"[.] He told [d]efendant to "make" the decision. Plaintiff was invited to the [d]efendant's home on the night the [c]ollege [c]ounselor was going over to talk to [d]efendant and he failed to attend. When he was asked about the college application selection, he responded "ok looks good"[.] All of his responses clearly show[] that the [p]laintiff was kept advised and certainly consented to the expenditures.

The court granted defendant's motion compelling plaintiff to reimburse her for fifty percent of the unreimbursed medical expenses and educational costs for Mary except for the driving school class costs she had requested. It ordered plaintiff to reimburse defendant $3,445.

8

Thereafter, the court denied plaintiff's cross-motion requesting to "spend [fifty percent] of the time with him for parenting time." The court found, after the interview with Mary, it was clear that she chose not to exercise parenting time with plaintiff because of "his uncontrollable temper, his continued need to try to persuade her to dislike her mother and the fact that his comments to her are very hurtful are the primary reasons for their damaged relationship."

The court conditionally granted plaintiff's request for reunification therapy but required him to "first attend to his own individual matters before any reunification therapy would be fruitful." The court ordered plaintiff to attend individual counseling for a period of "at least [six] months . . . then file an application with the court for reunification therapy with [Mary]."

On appeal, plaintiff argues the court erred: (1) when it "ignore[d]" the "ordered reunification therapy"; (2) by allowing all exhibits to be provided to plaintiff the morning of the hearing; (3) by failing to consider the parties financial circumstances when ruling on the defendant's application for reimbursement; (4) in showing bias by considering text messages from before the divorce proceedings twelve years ago; (5) by erroneously quoting him regarding vacations without permitting him to explain the quotes at the plenary hearing; (6) by ignoring his concern for Mary's underage drinking, tattoos and

9

inappropriate parenting; and (7) in showing bias with regard to the college counselor.

## II.

Family courts maintain "special jurisdiction and expertise in family matters," so "appellate courts should accord deference to family court fact-finding." Cesare v. Cesare, 154 N.J. 394, 413 (1998). "Discretionary determinations, supported by the record, are examined to discern whether an abuse of reasoned discretion has occurred." Ricci v. Ricci, 448 N.J. Super. 546, 564 (App. Div. 2017).

Our standard of review is that we will not disturb a trial judge's factual findings when they are "supported by adequate, substantial and credible evidence." Rova Farms Resort v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974). We only "disturb the factual findings and legal conclusions of the trial judge [when] we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)). However, "all legal issues are reviewed de novo." Ricci, 448 N.J. Super. at 565 (citing Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

Because matrimonial and property settlement agreements are governed by basic contract principles, courts should discern and implement the parties' intentions. J.B. v. W.B., 215 N.J. 305, 326 (2013). "It is not the function of the court to rewrite or revise an agreement when the intent of the parties is clear." Quinn v. Quinn, 225 N.J. 34, 45 (2016) (citing J.B., 215 N.J. at 326). "Accordingly, [MSAs] should be enforced so long as they are consensual, voluntary, conscionable, and not the result of fraud or overreaching." Satz v. Satz, 476 N.J. Super. 536, 551 (App. Div. 2023).

A.

<u>Plaintiff's Application for Fifty Percent
Parenting Time and Reunification Therapy</u>

Initially, we address plaintiff's argument that the trial court erred by denying his application for "fifty percent" of the parenting time with Mary and denying his request to enforce reunification therapy.

> In custody [and parenting time] cases, it is well settled that the court's primary consideration is the best interests of the children. . . . The court must focus on the "safety, happiness, physical, mental and moral welfare" of the children. Fantony v. Fantony, 21 N.J. 525, 536 (1956). See also P.T. v. M.S., 325 N.J. Super. 193, 215 (App. Div. 1999) ("In issues of custody and visitation '[t]he question is always what is in the best interests of the children, no matter what the parties have agreed to.'") . . . Custody issues are resolved using a

11

best interests analysis that gives weight to the factors set forth in N.J.S.A. 9:2-4(c).

[Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007) (citations omitted).]

We conclude the court did not err in denying plaintiff's requests for fifty percent parenting time with Mary and to compel her to participate in reunification therapy. The court's reasoning was based on credible and substantial evidence in the record to support its decision, including information obtained from Mary's in camera interview. The court's finding that plaintiff has an uncontrollable temper, his continued need to try to persuade Mary to dislike defendant, and his hurtful comments to Mary through his texts and communications supports its denial of plaintiff's fifty percent parenting time request. We also note, on or about the date Mary was interviewed and at the time of the court's decision, she had reached the age of eighteen, and her position that she did not desire to have fifty percent parenting time with plaintiff was required to be considered by the court as part of its parenting time analysis. See N.J.S.A. 9:2-4(c) (setting forth a "best interests" standard for custody determinations including the consideration of the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision).

A-1362-23

We conclude the court's decision to deny parenting time, as it was not in Mary's best interests, was amply supported by the record and not an abuse of discretion.

The court also relied on these same factual findings to deny plaintiff's request for reunification therapy and conditionally denied this relief based on plaintiff engaging in and completing his own individual counseling prior to any reunification therapy taking place. We find no error in this determination as there was sufficient evidence in the record to support the court's finding. In addition, upon plaintiff's satisfactory completion of individual therapy, he would be permitted to re-apply for reunification therapy with Mary.

B.

<u>Defendant's Challenge to the Order Requiring Plaintiff</u>
<u>to Reimburse Defendant for Medical and Educational Expenses</u>

We now turn to plaintiff's argument contending the trial court erred by ordering him to reimburse defendant one-half of Mary's medical and educational expenses. Plaintiff argues the court erred by not considering each parties' current financial circumstances before ordering him to reimburse defendant one-half of the medical and educational costs. Related to this point on appeal, we note the following colloquy occurred at the end of the hearing between the court and plaintiff regarding the proportions of costs each party would pay:

13

THE COURT:       You told me it wasn't an issue of not
                 being able to afford the expense.

PLAINTIFF:       Right, these specific expenses, yes.

THE COURT:       These specific–expenses.

PLAINTIFF:       Okay . . . I think both of us were
                 confused in terms of college or not.

We conclude plaintiff waived his argument that the trial court erred by not considering the parties current financial circumstances before ordering him to pay a one-half proportion of the medical and educational expenses claimed by defendant. At the hearing, plaintiff agreed he could afford to pay one-half of the costs requested by defendant but asserted because he did not participate or have any input in the decision to incur the costs he should not be required to reimburse defendant any amount. Since the court's finding that plaintiff was notified and agreed to pay one-half the costs was supported by sufficient evidence in the record including defendant's testimony and the documents she moved into evidence, we conclude the court did not err by requiring plaintiff to reimburse defendant one-half of the medical and educational expenses. In addition, the record clearly exhibits plaintiff was informed by the court that it was only ruling on defendant's motion compelling him to reimburse one-half of the medical and educational costs already paid by her, not for future college

14

costs. Therefore, we discern no error in the trial court's determination requiring the parties to pay one-half of Mary's expenses.

C.

<u>Plaintiff's Remaining Contentions on Appeal
that the Court's Bias Towards Him and Its
Evidentiary Rulings were Errors that Require Reversal</u>

"[J]udges must avoid acting in a biased way or in a manner that may be perceived as partial." <u>DeNike v. Cupo</u>, 196 N.J. 502, 514 (2008) (emphasis omitted). "[B]ias is not established by the fact that a litigant is disappointed in a court's ruling on an issue." <u>State v. Marshall</u>, 148 N.J. 89, 186 (1997). "[T]he belief that the proceedings were unfair must be objectively reasonable." <u>Id.</u> at 279. Here, we perceive no bias by the trial court against plaintiff by considering text messages exchanged between the parties twelve years prior to the hearing and by considering evidence related to defendant's notice to him concerning the college counselor. Those issues were relevant to the plaintiff's request for one-half of the parenting time with Mary and the defendant's motion for reimbursement from him. Therefore, the court's consideration of this evidence was appropriate and clearly was not biased.

Based on our careful review of the record, we further conclude that the court treated the parties equally concerning the directives issued to them during

the hearing, in its application of the rules of evidence and in its general demeanor toward both. We perceive no partiality or bias towards either party by the court. Therefore, we determine plaintiff's contentions that the trial court exhibited bias towards him lack merit.

Defendant also contends that the court erroneously quoted his testimony related to vacations without permitting him to explain the quotes at the plenary hearing and ignored his concern for Mary's underage drinking, tattoos and inappropriate parenting which errors require reversal. Those contentions lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We add only that our standard of review of a trial court's evidentiary rulings is for abuse of discretion. Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008). We conclude the trial court's determinations regarding these fact-sensitive issues were not an abuse of discretion. The issue of primary custody was not in dispute and there was limited, if any, relevance to this evidence concerning the parenting time and reunification therapy issues plaintiff raised in his cross-motion. We further conclude our prior determination upholding the court's finding that plaintiff agreed that he could afford to pay one-half of the expenses makes his financial ability to take vacations irrelevant to our review on appeal.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

16

A-1362-23