**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0671-24

D.P.,[1]

    Plaintiff-Appellant,

v.

L.B.,

    Defendant-Respondent.

_____

Submitted November 12, 2025 – Decided December 8, 2025

Before Judges Gooden Brown and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Salem County, Docket No. FD-17-0237-24.

Ronald B. Thompson, attorney for appellant.

Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials to protect the privacy of the parties' minor child. See R. 1:38-2(d)(13).

In this post-judgment matrimonial matter, plaintiff D.P. appeals from a September 24, 2024 order designating defendant L.B. as the parent of primary residence (PPR) for the parties' then fourteen-year-old son, M.P. Discerning no error in the motion judge's decision, we affirm.

I.

The parties were married on a date that was not disclosed in the limited record provided on appeal.[2] Apparently, two children were born of the marriage, M.P. and his sister, De.P., who was nineteen years old at the time of the present motion. According to a March 24, 2021 New York family court order, the parties' November 2, 2016 judgment of divorce "incorporated their settlement agreement as to custody."

In the March 24, 2021 order, the New York family court found the children resided with defendant in Brooklyn until "the fall of 2019 when, with absolutely no notice to [plaintiff], [defendant] moved from Brooklyn over 150 miles away to [S]outh Jersey." The order reflects, following a multi-day evidentiary hearing on five non-consecutive days between December 13, 2019

---

[2] Plaintiff's eleven-page appellate appendix only includes: the September 24, 2024 order under review; a March 24, 2021 order issued by a New York State, Kings County family court; plaintiff's September 2024 emergent application for an order to show cause; and plaintiff's notices of appeal.

A-0671-24

and December 8, 2020, the New York family court found defendant's move "negatively impact[ed] and intrud[ed] upon [plaintiff]'s limited weekend [sic] with the children." Citing specific incidences of defendant's conduct, the court determined defendant interfered with plaintiff's relationship with the children and plaintiff established "a substantial change in circumstances" since the November 2016 custody order. The court scheduled a conference to establish "dates for the continued trial on the issue of best interests and [defendant]'s relocation request."[3]

In September 2024, plaintiff filed an emergent application for an order to show cause in the Family Part. In his September 9, 2024 certification, plaintiff asserted defendant failed to enroll M.P. in school, but she told the same judge who issued the present order "[he] was enrolled at Salem County VoTech." Plaintiff expressed his concerns that "[M.P.'s] educational and [individualized education plan (IEP)] needs [we]re not [then] being met," and "[defendant was] attempting to relocate [M.P.] out of state."

---

[3] It is unclear from the record whether the New York family court continued the hearing contemplated in the March 24, 2021 order. We glean from the Family Part hearing in the present matter, litigation between the parties concerning child support and defendant's order of protection against plaintiff were pending in the New York courts at the time of the present hearing.

A-0671-24

Plaintiff further certified, if his relief was denied, M.P. "w[ould] suffer immediate and irreparable harm" for the following reasons:

> [M.P.] has already missed the first week of 9th grade, [h]igh [s]chool. I spoke with him this morning (9/9/24). He is still in the shelter, and not in school. I am deeply concerned that [M.P.]'s situation [is] causing significant and irreparable harm to his well[-]being. This consis[]tent lack of stability for the past year is a disruption to his emotional, mental[,] and social development, considering that he has an IEP.

On the September 23, 2024 return date of plaintiff's show cause application, plaintiff was represented by counsel and defendant represented herself. Both parties testified and plaintiff moved into evidence the March 24, 2021 New York family court order.

Consistent with his certification, plaintiff testified he sought temporary residential custody of M.P. so the child could have some stability. Plaintiff stated defendant's home, where she resided with M.P., "was foreclosed on July 3, 2023," and plaintiff believed they were living in shelters and motels since then.

Plaintiff stated he checked with the school defendant claimed M.P. was attending and learned M.P. was not enrolled there or in any other school in the area. Plaintiff testified he therefore registered M.P. in the Plainfield Public School District as plaintiff and his wife resided in the city with their two-year-

4

old son.  Plaintiff explained if he had custody of M.P., the child could walk to school and be cared for by plaintiff and his wife.  Plaintiff later received a letter indicating M.P. was enrolled in school, but the hearing date was M.P.'s first day.  As such, M.P. missed the first three weeks of school.

Defendant acknowledged she lived at a motel following the foreclosure and M.P. was left alone at times.  When questioned about criminal activity in the area, defendant replied "[she] would not be there with [her] children if [she] didn't think it was safe."  Defendant testified she was employed and actively searching for a permanent home.

Defendant confirmed the hearing date was M.P.'s first day attending school.  Although M.P. was previously registered in school, he was unenrolled in August until defendant demonstrated she and M.P. resided in Salem County.

After both parties testified, the motion judge conducted an in-camera interview of M.P., which included questions requested by the parties.  M.P. stated he lived with his mother and sister at the motel and noted it was "not the best."  M.P. said he was left alone in the motel about two days per week for one to two hours.  M.P. initially stated he preferred to stay with his mother because they've been together through tough times and she needs help with things like technology.  But M.P. acknowledged both parties were good choices and he

believed living with either would be fine. Ultimately, however, M.P. stated he preferred to live with his mother. At the conclusion of M.P.'s statement, the judge excused the child and summarized their conversation on the record.

During his closing argument, plaintiff's counsel cited his lengthy criminal law practice and stated, "I know what goes on in hotels and motels." Acknowledging defendant might be unaware of drug activity occurring in those environments, plaintiff's counsel sought joint legal custody and primary residential custody for his client. Defendant expressed her desire to keep her children together and remain M.P.'s "sole custodial parent."

In her oral decision, the motion judge found plaintiff demonstrated a change in circumstances warranting modification of the existing custody order issued in New York.[4] Those circumstances included: defendant's "evict[ion] from her residence as a result of the foreclosure"; she was "currently living in a motel room with the child"; and she delayed enrolling M.P. in school. Citing N.J.S.A. 9:2-4, the judge found plaintiff demonstrated it was in M.P.'s best interest "for the parents to share joint legal custody," but not "for [plaintiff] to be named [PPR]."

---

[4] Based on the undisputed testimony of the parties, the judge recognized the November 2016 New York family court granted defendant "sole, legal, and physical custody," and the parties had agreed to a parenting time schedule.

The judge generally credited the testimony of both parties. However, the judge noted plaintiff's testimony concerning defendant's failure to comply with the parenting time schedule was "vague," thereby "affect[ing] his credibility slightly." The judge also found, contrary to the allegations stated in plaintiff's show cause application, the circumstances concerning M.P.'s delayed enrollment in school "[we]re not as dire as [plaintiff] argued" as "some delay" was understandable. Further, plaintiff's contentions that M.P. was homeless and emotionally abused "were not borne out in the testimony."

Turning to the applicable factors set forth in N.J.S.A. 9:2-4(c), the motion judge cited the lack of communication between the parties and evidence that defendant had not fully complied with the agreed-upon parenting time schedule, and found those factors weighed in favor of granting plaintiff joint legal custody. The judge recognized M.P. enjoyed a good relationship with both parties, but noted M.P. appeared to have a closer relationship with defendant and his sister. Although the judge found plaintiff had a more stable home environment, she ultimately concluded M.P. was safe with either party and his basic needs were met by defendant. Although residing in a motel room was not ideal, the judge found no evidence in the record that M.P. was unsafe. Recognizing the town in which the motel was located "can be a high crime area in locations," the judge

7

nonetheless found "no evidence that [M.P.] would not be safe where he [wa]s with his mother." Significantly, the court recognized M.P.'s age, his ability to communicate with either parent, and his desire to live with defendant. This appeal followed.

Maintaining he demonstrated modification of the parties' custody order was in M.P.'s best interests, plaintiff argues the court erroneously denied his request to designate him PPR. Plaintiff further contends the court failed to properly weigh the child's safety under the factors set forth in N.J.S.A. 9:2-4, in view of the evidence that M.P. was left alone in a motel located in a high crime area.

## II.

Our scope of review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "We accord deference to Family Part judges due to their 'special jurisdiction and expertise in family [law] matters.'" Gormley v. Gormley, 462 N.J. Super. 433, 442 (App. Div. 2019) (alteration in original) (quoting Cesare, 154 N.J. at 413). A judge's findings "are binding on appeal so long as their determinations are 'supported by adequate, substantial, credible evidence.'" Ibid. (quoting Cesare, 154 N.J. at 411-12). Deference is especially important where evidence is testimonial and involves credibility determinations

because the observing judge "has a better perspective than a reviewing court in evaluating the veracity of witnesses." Pascale v. Pascale, 113 N.J. 20, 33 (1988). "We accord deference to fact[-]findings of the family court because it has the superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 448 (2012). We do not, however, afford "special deference" to "[a] trial court's interpretation of the law and the legal consequences that flow from established facts." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

"In custody cases, it is well settled that the court's primary consideration is the best interests of the children." Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007). The focus is on the "safety, happiness, physical, mental and moral welfare" of the children. Fantony v. Fantony, 21 N.J. 525, 536 (1956). Particularly, "[t]he designation of a [PPR] is a consequential decision because 'the primary caretaker has the greater physical and emotional role' in a child's life." A.J. v. R.J., 461 N.J. Super. 173, 182 (App. Div. 2019) (quoting Pascale v. Pascale, 140 N.J. 583, 598 (1995)).

A-0671-24

As the motion judge correctly recognized, when "making an award of custody," courts must consider the following fourteen factors under N.J.S.A. 9:2-4(c) in a best interests analysis:

> the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children.

We have considered plaintiff's contentions in view of these applicable legal principles and conclude they lack sufficient merit to warrant extended discussion in our written opinion. R. 2:11-3(e)(1)(E). We affirm substantially for the reasons expressed by the motion judge in her well-reasoned decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

10

A-0671-24